IRA BARNARD, Respondent v. THE METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 17, 1909.

1. STREET RAILWAYS: Collision: Negligence: Humanitarian Doctrine: Evidence. The evidence relating to a head-end collision between a street car and a wagon and team is reviewed, and waiving out of the case the contributory negligence of the plaintiff, is insufficient to accuse the motorman driving the car of a negligent breach of his humanitarian duty towards plaintiff.

2. ———: ———: ———: Presumption: Humanitarian Doctrine. A motorman seeing a wagon approaching his moving car on the track, has a right to indulge the presumption that the driver would leave the track in time to avoid collision as his duty requires him to, and to continue such presumption until a reasonable man in his situation could see that the driver with eyes open was heedlessly and wantonly permitting his position of safety to merge into one of danger.

3. ——: ——: Evidence: Speed: Physical Facts. *Held*: That physical facts attending a head-end collision between a street car and a wagon justify the application of the rule that the testimony of witnesses should be rejected as devoid of probative force since it seeks to controvert the single conclusion that may be drawn by a reasonable mind from conceded physical facts.

Appeal from Jackson Circuit Court.—*Hon. James E. Goodrich,* Judge.

REVERSED.

*John H. Lucas* and *F. G. Johnson* for appellant.

(1) The first and principal error of the court in this case was its refusal to give a peremptory instruction in favor of defendant. Cole v. Railroad, 121 Mo. App. 613; Ellerman v. Transit Co., 102 Mo. App. 295; Warner v. Railroad, 178 Mo. 125; Cogan v. Cass Ave. Railroad, 101 Mo. App. 190; Asphalt and Granitoid Construction Co. v. Transit Co., 102 Mo. App. 469; Hebeler v. Railroad, 132 Mo. App. 551. (2) There is but one inference to be drawn from plaintiff's acts and that is his failure to stop his horses was negligence on his part, and for that reason the demurrer at the close of plaintiff's evidence and the demurrer at the close of all the evidence should have been given. Warner v. Railroad, cited above; Asphalt & Granitoid Constr. Co. v. Transit Co., cited above; Moore v. Railroad, 176 Mo. 528; Barrie v. Transit Co., 102 Mo. App. 87; Fanning v. Transit Co., 103 Mo. App. 151; Von Bach v. Railroad, 171 Mo. 338; Reno v. Railroad, 180 Mo. 469; Petty v. Railroad, 179 Mo. 666; Holwerson v. Railroad, 157 Mo. 216. (3) There is no last chance under the evidence in this case. Sharp v. Railroad, 161 Mo. 237; Tanner v. Railroad, 161 Mo. 512.

*Martin J. O'Donnell* for respondent.

(1) Under any circumstances when a human being is in a situation of danger and he is so far away from that danger that, by the exercise of ordinary care on the part of those in charge of the dangerous instrumentality, injury may be averted, but such care is not exercised and injury results, then the party is responsible for the injury, regardless of the manner in which the dangerous situation was brought about. Hilz v. Railroad, 101 Mo. 54; Kelly v. Railroad, 101 Mo. 75; Morgan v. Railroad, 159 Mo. 262; Fearons v. Railroad, 180 Mo. 208; Moore v. Transit Co., 194 Mo. 12; Ross v. Railroad, 113 Mo. App. 605; Zander v. Transit Co., 206 Mo. 464; Feeney v. Railroad, 113 Mo. App. 605; Klockenbrink v. Railroad, 172 Mo. 689; Cole v. Railroad, 121 Mo. App. 605; Beckenwald v. Railroad, 121 Mo. App. 595; Everett v. Railroad, 112 S. W. l. c. 685; Chamberlain v. Railroad, 133 Mo. 600; McNamara v. Railroad, 114 S. W. 52; Epstein v. Railroad, 197 Mo. 733. (2) Whether person in danger be conscious or unconscious of the approaching peril is immaterial. When it is obvious that a driver is prevented by his surroundings from leaving the track or is unreasonably dilatory in doing so, it becomes the duty of the motorman to employ all reasonable means to avoid a collision. Ross v. Railroad, 132 Mo. App. 478; Tartt v. Railroad, 99 Fed. 369; Shanks v. Transit Co., 101 Mo. App. 706; Cole v. Railroad, 113 S. W. 685. (3) It was the duty of defendant's motorman in operating its car in the nighttime, in a populous part of the city, to have been on the lookout for the safety of persons who might be on its track, and to have had his car under control for any danger that might present itself. Funck v. Railroad, 113 S. W. 695; Klockenbrink v. Railroad, 172 Mo. 687. (4) Whenever it appears that the operator of the instrument of injury in the exercise of reasonable care should have been warned by the appearance of the situation confronting him, that a human being was in peril, it then became his absolute duty to make every

reasonable effort to avoid the injury, regardless of whose fault brought about the peril. (5) It is the duty of train operatives to take notice of the usages and conditions actually existing on the streets over which they operate their cars; they are required to anticipate the probable presence of persons on the track at such places, to be on the lookout, and to regulate their actions accordingly. And whether this duty is performed or not is a question for the jury to determine. Garner v. Trumbull, 94 Fed. 321; Fearons v. Railroad, 180 Mo. 227. (6) The circumstances that the wheels were sliding on the rails was sufficient warning to the motorman that plaintiff was in peril and when by the exercise of reasonable care he could, having seen that the wheels were sliding, it became his absolute duty to use all the means at his disposal to avert the collision, and whether he did so or not was a question for the jury to determine. Kinlen v. Railroad, 115 S. W. 527; McKenzie v. United Railroads, 115 S. W. 13; Murphy v. Railroad, 46 N. Y. Supp. 283. (7) The peremptory instruction was properly refused. Cooney v. Railroad, 80 Mo. App. 226; Ross v. Railroad, 113 Mo. App. 600; Waddell v. Railroad, 113 Mo. App. 685; Heinzle v. Railroad, 182 Mo. 528; Kinlen v. Railroad, 115 S. W. 527; McKenzie v. Railroad, 115 S. W. 52; Meeker v. Railroad, 178 Mo. 173; Jett v. Railroad, 178 Mo. 664.

JOHNSON, J.—Plaintiff sued to recover damages for personal injuries alleged to have been caused by the negligence of defendant. In addition to a general denial, the answer alleged "that if plaintiff received any injuries at the time mentioned in said petition, the same were caused by plaintiff's own fault and negligence." A trial to a jury resulted in a verdict and judgment for plaintiff and the cause is here on the appeal of defendant. Material facts disclosed by the evidence of plaintiff are as follows:

The injury occurred after dark in the evening of September 7, 1907, on Westport avenue in Kansas City

and was caused by a head-on collision between a wagon
driven by plaintiff and an electric street car operated by
defendant on its Westport line.   Plaintiff was driving a
good, strong team hitched to a heavy dirt wagon which
carried a load of about fifteen hundred pounds consist-
ing chiefly of baled hay.   He was going west on West-
port avenue and drove on the north track of defendant's
railway (there are two tracks in this street) until a
west-bound car came up from behind and caused him to
drive on to the south track to permit the car to pass.   He
chose to travel on the part of the street covered by the
car tracks because the pavement on each side was in very
bad repair.   When he reached the south track, he looked
ahead and saw a car approaching from the west.   The
car was about a block and a half away and was running
at a good rate of speed. Plaintiff immediately endeavored
to return to the north track to avoid this car and to that
end, turned his horses towards the north.   The wagon
wheels were inside the rails of the track and the rails
were somewhat elevated above the pavement.   The result
of this condition was that the wagon wheels did not go
over the north rail but remained inside sliding along.
Plaintiff says he realized he was in danger of being
struck and did all he could to drive off the track, but the
wheels would not climb the rail and slid along for
about one hundred and fifty feet, when the collision oc-
curred.   Witnesses for plaintiff state that the speed of
the car was not appreciably reduced before the colli-
sion; that the wagon was visible to the motorman a dis-
tance of six hundred feet or more and that under all the
circumstances the car, running at twelve miles per hour,
could have been stopped in one hundred and seventy feet.
The front end of the car struck the front end of the
wagon tongue, the point of contact being about eighteen
inches north of the center of the car.   The tongue was
not broken, nor did it penetrate the car.   The impact had
the effect of pushing the wagon back four or five feet
when both vehicles stopped.   The load in the wagon was

not displaced, neither vehicle was damaged, but plaintiff was thrown from his seat to the pavement and injured. The near horse fell into and broke the fender of the car, the off horse was far enough to the north to escape being struck. The force of the impact was sufficiently violent to demolish the harness. Further, it appears that Westport avenue, though not in the heart of the city is a much-traveled thoroughfare, and that usually the travel is heavy at the hour of the injury in question.

The motorman, introduced as a witness by plaintiff, testified that he was running at a speed of about twelve miles per hour, the customary rate in that part of the city; that he was keeping a close lookout ahead; that owing to the presence of an overhead arc light in the street in front of him, he could not and did not see the wagon until it emerged from the darkness beyond into the space illuminated by the arc lamp; that the car and wagon then were about one hundred and twenty-five feet apart; that he immediately applied the air, then reversed the power, and by these efforts, reduced speed to the extent that the car had almost stopped when the collision occurred.

The specifications of negligence in the petition are as follows: "First. In running said car at a high, dangerous and excessive rate of speed, without regard for the safety of this plaintiff and the general public using said street. Second, in failing to sound the gong, or otherwise notify plaintiff of the approach of said car, and thereby give plaintiff an opportunity to avoid the collision therewith. Third, in failing to see the team and wagon, in which plaintiff was riding, on or near defendant's said track, in time to have stopped said car before it collided with said team and wagon, when, by the exercise of reasonable and ordinary care, defendant's servants and employees could have seen said team and wagon, in time to have stopped said car before it collided with said team and wagon; or in failing to stop said car,

137 App.—44

after becoming aware of the dangerous and perilous position of said plaintiff, his said team and wagon, before said car collided therewith, when, by the exercise of reasonable and ordinary care, defendant's servants and employees in charge of said car, could have stopped said car before the occurrence of the collision, which caused plaintiff's injuries."

In the instructions given the jury at the request of plaintiff, the first and second acts of negligence alleged in the petition were abandoned and the only issues submitted were whether the motorman exercised reasonable care to discover that plaintiff was in a position of peril and reasonably employed the means at his command to avoid a collision. In the view we take of the facts of the case, the learned trial judge erred in refusing defendant's request for an instruction in the nature of a demurrer to the evidence. The version of the accident given by plaintiff is so remarkable in some of its features as to appear almost incredible. He admits that when the car was six hundred feet away, he knew of its approach and realized that he must leave the track, and asserts that he began at once his efforts to drive off but was prevented by the elevation of the rail above the surface of the street which caused his wagon wheels to slide a distance of one hundred and fifty feet. Yet he kept right on towards the approaching car which he observed was not reducing speed. That he made no effort worthy of the name to leave the track is apparent from the undisputed physicial facts of the situation. He had a strong team and a light load. The rail extended but little above the surface of the street and if he allowed the wheels to slide one hundred fifty feet along the rail, it was because he did not seriously try to cross it. He thus describes his team: "Q. How big a pair of horses did you have? A. One of them weighs fourteen hundred and the other about thirteen hundred. Q. A good big team? A. It certainly was. Q. And worth $400 at that time? A. Yes, sir. Q. It takes a pretty good team of horses to be

Barnard v. Met. Street Ry. Co.

worth $400 doesn't it? A. It certainly does—they were
a good team. Q. And you had on at this time, how
much hay? A. Well; I had about fifteen hundred
pounds on that wagon. Q. How much had you usually
loaded these horses, at that time, for a load? A. When
it comes to hauling where the streets was good, fifty hun-
dred was what I loaded them."

With such a team and load, it is difficult to believe
he could not have crossed the rail easily and expedi-
tiously had he turned his horses northward at a proper
angle. The fact that the end of the tongue struck the
car so near the middle and did not glance off to the right,
demonstrates that he was keeping well to the track of
his own accord. But we do not care to dwell long on
this phase of the case and shall pass to the question of
whether there was any substantial evidence to accuse the
motorman of a negligent breach of his humanitarian
duty towards plaintiff. In discussing this question, we
shall assume that plaintiff was right in saying that he
did try to drive off the track, and we shall further as-
sume the fact to be as stated by plaintiff's witnesses that
the wagon was visible to the motorman at the same
time that the car was visible to plaintiff, and that when
the vehicles were six hundred feet apart, the motorman
knew or should have known of the presence of the
wagon on the track in front of him. But these facts, of
themselves, do not make out a case of negligence. The
motorman, until something to the contrary appeared,
was entitled to indulge in the presumption that the
driver of a wagon coming towards him would leave the
track in ample time to avoid a collision. The car could
not leave the track and if the wagon did not leave it, the
vehicles could not pass each other. Therefore, it be-
came the duty of plaintiff to give the car opportunity to
pass, and the motorman had the right to believe that
plaintiff would perform that duty and to rest in that
belief until something in the conduct of plaintiff should
betray to the watchful eye that either recklessly or negli-

gently, he was remiss in the discharge of this duty and, thereby, was becoming imperiled. Certainly when the vehicles were six hundred feet apart, there was no occasion for the most prudent person in the position of the motorman to think that plaintiff was in danger, for he was in no sort of danger at that time. Nor was there anything to suggest peril in the fact that when plaintiff first started to turn off the track the wagon wheels slipped on the rail. That is a common occurrence. Seeing, as he must have seen, that plaintiff had a team capable of drawing a heavy load and that the wagon was lightly loaded, no reasonable man in his position would have supposed that the team would have any difficulty in pulling the wheels across the rail, but would have supposed that the sliding was but temporary and easily to be remedied when plaintiff put forth a proper effort to overcome it.

We are not dealing here with a case where a driver of a wagon is in real peril to which he is oblivious, but with a case where he knows what is ahead of him and has ample means at hand to avoid the danger. Manifestly, as long as the driver of a wagon in such case is where a reasonable effort on his part will enable him to avoid injury, the motorman would be justified in assuming that no danger existed, and until it should dawn on a reasonable man in his situation that the driver of a vehicle, with eyes open, is heedlessly or wantonly permitting his position of safety to merge into one of danger, there can be no occasion to anticipate that the driver will not perform his duty nor follow the instinct of self preservation. What we said in the following extract from the opinion of ELLISON, J., in Hebeler v. Railroad, 132 Mo. App. 551, a case similar to the one before us, is in line with what we are saying now:

"Now what was the situation as viewed by the motorman, taking him, as we must, to have been a man of ordinary sense and prudence? If, as plaintiff contends, he should have observed the man and team sooner than

he did, he would merely have seen the ordinary thing of a man driving on the track. He would, of course, suppose that the man would get off. He would not have seen an inattentive man oblivious to danger. He would have seen a man who was aware of the danger if he remained on and who, himself, in point of fact, was intending to get off, and only failed by reason of the unexpected accident of the wheel sliding on the rail. Allowing that the driver, under the circumstances, was not guilty of negligence in being on the track, he was not negligent in not attempting to get off sooner, for he made the attempt in time but for the unexpected sliding of the wheel.

"And so of the motorman; if he had the driver in view for a full half mile as plaintiff contends he did have or should have had, he would only have observed a man who had ample time to get off the track. The motorman's conduct should only be judged by the standard of an ordinarily prudent man. That standard would not require that he should have foreseen, had he observed the wagon, that it would slide on the rail, any more than that the harness would suddenly break or that one of the horses would fall down."

The evidence even in its aspect most favorable to plaintiff does not indicate that the motorman failed to observe the peril of plaintiff at the earliest opportunity and every fact tends to show that as soon as he knew that plaintiff was in danger the motorman put forth every effort to stop the car. True, witnesses for plaintiff deny this and say that the speed of the car was not slackened, but this cannot be true. The plain, conceded, physical facts proclaim that the car was almost at a standstill at the time of the collision. The car was of a heavy type, double trucks, and had it been running twelve miles per hour, or even half so rapidly, when the collision occurred, it is inconceivable that both car and wagon would have escaped injury. This conclusion is so strong that we must deem it indisputable and apply the

rule that the testimony of witnesses should be rejected as devoid of probative force when it seeks to controvert the single conclusion that may be drawn by reasonable minds from conceded physical facts. We must hold that plaintiff has failed completely to show the existence of any culpable conduct on the part of the motorman and that the verdict is based on mere conjecture and suspicion.

The motion to dismiss the appeal filed by plaintiff has been examined and is found to be without merit.

The judgment is reversed. All concur.