## AMANDA J. POPE v. WABASH RAILROAD COMPANY, Appellant.

**Division Two, April 9, 1912.**

1. **APPELLATE PRACTICE: Demurrer to Evidence.** An assignment that the court erred in overruling defendant's instruction in the nature of a demurrer to the evidence, offered at the close of all the testimony, necessitates on appeal a review of all the evidence tending to support plaintiff's cause of action, whether introduced by plaintiff or defendant.

2. **DAMAGE STATUTE: Sec. 5425: Constitutional.** On the authority of Young v. Railroad, 227 Mo. 307, section 5425, Revised Statutes 1909, is held to be constitutional.

3. **NEGLIGENCE: Signal: Knowledge of Train's Approach.** The object of a signal is to give warning, and if those on the track know of the train's approach, without the signal, in time to escape from danger, then failure to give the signal is of no legal importance.

4. ————: **Speed-Limit: Proximate Cause.** Where plaintiff and deceased, in running towards and crossing the cattle-guard to get off of the track, were not in any manner influenced by the belief that the train was running at a speed in excess of the maximum rate permitted by ordinance, the failure of the train men to observe the ordinance speed-limit was not the proximate cause of the injury, and plaintiff cannot recover on the theory of negligence in violation of the city ordinance.

5. ————: **Humanitarian Doctrine: Knowledge of Train's Approach.** Where a pedestrian knows of the train's approach and is at that time at a place on the railroad track at which he can safely get off and avoid being hurt and does not do so, the humanitarian doctrine does not apply. Where he knows of the train's approach, and can get off and be safe, those in charge of the train have a right to presume that he will get off, and then before there can be any recovery it must be shown that the engineer, after he saw the pedestrian's peril (that is, after it became apparent that the pedestrian did not intend to step off, but was intending to stay on the track), did not exercise proper care to stop the train. The law does not require a train to be stopped every time an adult person is seen on the track ahead.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

REVERSED.

*J. L. Minnis* and *Higbee & Mills* for appellant.

(1) The court erred in overruling defendant's demurrer to the evidence. It was admitted by plaintiff that she and her husband both knew the train was rapidly approaching them, was very near, and that they "would have to get out of the way some way." With full knowledge of their perilous position they ran a race with death. Their wanton and reckless negligence continued down to the moment of the catastrophe, after it was impossible for the engineer to avoid it. It was the proximate cause of Pope's unfortunate death. Veatch v. Railroad, 145 Mo. App. 232; Sissell v. Railroad, 214 Mo. 530; Sinclair v. Railroad, 133 Mo. 233; Laun v. Railroad, 216 Mo. 563; Mockowick v. Railroad, 196 Mo. 550; McMamamee v. Railroad, 135 Mo. 440; Fry v. Railroad, 200 Mo. 377; Porter v. Railroad, 199 Mo. 100; McGee v. Railroad, 214 Mo. 530. (2) The court erred in giving plaintiff's instruction 2. It purports to cover the whole case and does not confine the issue of fact to those belonging to negligence under the doctrine of the "last chance." It eliminates the contributory negligence of plaintiff and her husband, which continued to the moment of the catastrophe, and unquestionably was the proximate cause of his death. Pope was able to run and to get off the track. He was not at any time in peril from the engineer's standpoint; he could at any time have stepped aside. His foot was not caught as in Woods v. Railroad, 188 Mo. 229, syl. 3. Yet this instruction, without qualification, told the jury if the engineer saw Pope on the track it was his duty to stop the train. The engineer knew Pope and his wife both saw the train. It was running at a speed of thirty miles per hour, as averred in their petition; he had a right to continue running the train without checking its speed, and to act upon the presumption they would get off the track, until the last moment. If this

instruction is the law, no train could be run on schedule time. This was the only instruction given; all of defendant's instructions were refused. Laughlin v. Railroad, 144 Mo. App. 185; Degonia v. Railroad, 224 Mo. 564; Frye v. Railroad, 200 Mo. 377. (3) The court erred in refusing defendant's instruction 2. Plaintiff and her husband with full knowledge of their peril believed they could reach and cross the cattle-guard in safety, and recklessly raced with death. Plaintiff repeatedly urged her husband to run and to run faster. They unfortunately misjudged the speed of the train or their own ability. Roenfeldt v. Railroad, 180 Mo. 554; Laun v. Railroad, 216 Mo. 563; Kinlen v. Railroad, 216 Mo. 164.

*Campbell & Ellison* and *Chas. E. Murrell* for respondent.

Where there is any evidence, be it ever so slight, to support the verdict of the jury, the same will not be disturbed by the appellate court. There is an abundance of testimony to support the judgment in question. The engineer, after discovering the deceased on the track 1500 feet away from him running for the crossing, and knowing, as he admits, that these two old people were running for the crossing and that they would have a close call, made no effort to stop the train until at the time or after he struck the deceased. In other words he did not exercise ordinary care to prevent the injury after he discovered their position of peril and that they did not intend to leave the track. Under the decisions in this State and the facts of this case, it was a question for the jury, as to whether he exercised ordinary care to prevent the injury. The engineer would know better than anyone else in what distance the train could be stopped, and he says that he could stop it under the conditions there existing, with safety to the train and those on board,

in a distance of 900 or 1000 feet. Then if he had made the emergency appliance at the point where he says he did, he would have stopped the train before he reached the crossing and place of accident. The uncontroverted evidence is that he ran more than 1000 feet after he struck the deceased, showing that the emergency application was made after the accident. The question then before the court is whether or not the appellant exercised ordinary care to prevent the injury complained of. Rayburn v. Railroad, 187 Mo. 573; 2 Thompson on Law of Negligence, secs. 1734-38. When the deceased started to run at a time when the engineer was 1500 feet from him, it was the engineer's duty to act, and stop or slacken the speed of the train and save the deceased. Neier v. Railroad, 12 Mo. App. 25; Remer v. Railroad, 36 Hun (N. Y.) 253; Thompson on Negligence, secs. 1771, 1775; Woods v. Railroad, 188 Mo. 229; Mertens v. Railroad, 122 Mo. App. 304; Schafstette v. Railroad, 175 Mo. 164.

KENNISH, J.—On the 13th day of September, 1907, in the city of Kirksville, Adair county, Joseph Pope, deceased, was struck and killed by appellant's train. Respondent, his widow, brought this action for damages under the provisions of section 5425, Revised Statutes 1909. Upon a trial a verdict was returned in her favor, awarding damages in the sum of two thousand dollars. The defendant appealed to this court. In its answer the defendant assailed the constitutionality of said statute; hence the appellate jurisdiction of this court.

The acts of negligence assigned in the petition are that deceased, Joseph Pope, being upon the defendant's railroad track, where the same is much travelled by pedestrians, by the negligence of defendant's agents in charge of and operating defendant's train upon its said track, was knocked down and received

injuries from which he died; that by the exercise of
ordinary care on their part, the said agents so in
charge of said train might have seen said Pope and
become aware of his peril in time to have stopped the
train before it reached him, and thus have avoided
striking and killing him; that the defendant's said
agents negligently failed to ring the bell or sound the
whistle as the train approached said Pope, and that
the said agents negligently operated said train at a
high and dangerous rate of speed in said city, in vio-
lation of a city ordinance, thereby causing the injury
complained of.

The answer contained four defenses: a general
denial; a defense of contributory negligence; that the
ordinance limiting the speed of trains was unreason-
able and void; and that section 5425, Revised Stat-
utes 1909, under which the action was brought, was
unconstitutional.

At the close of all the testimony, the defendant
asked an instruction in the nature of a demurrer to
the evidence, which the court refused. Defendant
saved its exceptions and, among other errors as-
signed, complains of the action of the court in refus-
ing said instruction. This assignment necessitates
a review of all the evidence tending to support plain-
tiff's cause of action, whether introduced by plaintiff
or by defendant.

There was very little conflict as to the material
and determinative facts in evidence. It was shown
by the undisputed testimony that appellant's railway
track runs north and south at the place of the alleged
injury. Elizabeth street runs east and west on the
north side of the city of Kirksville, and it was at the
intersection of said street and railway track that the
deceased was killed. The track is straight and the
view unobstructed for a distance of more than half
a mile to the north, so that a person walking thereon
where the accident occured could plainly see an ap-

proaching train for that distance, and could as plainly be seen for the same distance by the engineer of a south-bound train.

Plaintiff's first witness was M. B. Cowan, the conductor on the train that killed deceased. He testified that the deceased was struck by a south-bound passenger train at about eight o'clock in the morning; that the crossing signal was given about fifteen hundred feet north of Elizabeth street crossing, and that the emergency brake was put on and the alarm signal given about the same time; that along the track, where a path made by pedestrians led from the pasture to the place of the accident, there was no obstruction to hinder a person from stepping off on either side to a place of safety from a passing train; that at the rate of speed the train was running that morning it could not have been stopped within a distance of less than about twelve to fifteen hundred feet.

Plaintiff testified in her own behalf. She was the only eyewitness to the accident, except the crew operating the train. She testified that she was sixty-three years of age and the deceased seventy-nine at the time of the accident; that they lived about a half of a quarter of a mile south of Elizabeth street crossing and about thirty yards west of the railway track; that she and deceased, the morning of the accident, had gone to the pasture to milk, as they had done twice a day for three years during pasture time, and as they were returning by way of the path upon the railway track, the deceased was struck by a south-bound passenger train and killed; that before he got upon the track plaintiff looked and listened, but heard no train; that as they walked south plaintiff felt a jar and looking back saw the approaching train north of the bridge; that they were then about sixty steps from Elizabeth street crossing, and immediately began to run so as to reach the crossing before the arrival of the train; that plaintiff looked back again when they were about

twenty or twenty-five steps from the crossing and, seeing the train coming on, urged the deceased to run faster, and as they crossed the cattle-guard and got off the track on the east in Elizabeth street, the train passed, striking her husband and instantly killing him; that they were about midway in the cut north of the cattle-guard when they first saw the train, and that they did not get off the track sooner because of the ditch and embankment on each side; that the ditch was about a foot and a half deep, and that plaintiff had crossed the ditch before when no train was near.

There was testimony for plaintiff tending to prove that the alarm signal was not given until the train was near Elizabeth street crossing.

I.   Since the trial of this case the constitutionality of section 5425, Revised Statutes 1909, on which the action was based, has been sustained by this court, and therefore appellant's attack thereon need not be further considered. [Young v. Railroad, 227 Mo. 307.]

II.   The alleged negligence of defendant, (1) in failing to give signals as the train approached, and (2) in exceeding the speed-limit ordinance read in evidence, were removed from the case as actionable issues by plaintiff's testimony.

Witnesses for plaintiff testified that signals were given, and, besides, plaintiff testified that she saw the train long before it reached them and she and deceased attempted to run and did run fifty yards on the track after they saw the train.

The object of a signal is to give warning, and if those on the track know of the train's approach without the signal, in time to escape from danger, then failure to give the signal is of no legal importance. [Mockowik v. Railroad, 196 Mo. 1. c. 570, and cases cited; McManamee v. Railroad, 135 Mo. 1. c. 449.]

It was shown by plaintiff's testimony that those operating trains on defendant's railway had never observed the speed-limit ordinance, neither had any effort been made to enforce it. Plaintiff lived within thirty yards of the railway track, and testified that she was familiar with the running of defendant's trains and their speed. There was no evidence that plaintiff and the deceased, in running toward and crossing the cattle-guard to get off the track, were in any manner influenced by the belief that the train was running within the time prescribed by the ordinance. These facts show that the failure to observe the ordinance was not the proximate cause of the injury, and preclude a right of recovery on the theory of negligence in the violation of the ordinance pleaded. [Laun v. Railroad, 216 Mo. 563; Kinlen v. Railroad, 216 Mo. 145; Moore v. Railroad, 176 Mo. 528.]

III. This leaves in plaintiff's case only the theory that the defendant's agents were negligent in not seeing the peril of the deceased and stopping the train in time to have avoided the injury. It was upon that theory the court submitted the case to the jury. It is known in our decisions as "the humanitarian doctrine." As applied to the facts of this case, it means that if those in charge of the train became aware of deceased's peril in time so that by the exercise of ordinary care they could have stopped the train or checked its speed and thus have averted the injury, the plaintiff was entitled to recover. But plaintiff does not bring her case within that rule.

In the case of Kinlen v. Railroad, 216 Mo. 1. c. 164, this court said: "The humanitarian doctrine only applies and authorizes a recovery where the injured party is ignorant or oblivious to the impending danger; but if he knew of the approaching danger, then clearly he would be guilty of such contributory

negligence as would prevent a recovery whatever the conduct of the agents in charge of the train might be.''

The foregoing language must be understood as applying to a case in which a person is upon the track at a place where he could safely have gotten off and out of danger when conscious of the train's approach. That was the situation in this case. The deceased knew of the oncoming train. He could have stepped off the track and have been safe. Those operating the train had the right to presume that he would get off, and there was no testimony tending to show any negligence on the part of the engineer after he saw the peril of deceased, that is, after it became apparent that the deceased did not intend to step to one side of the track, but was intending to run across the cattle-guard and into the street, before leaving the track.

Doubtless the plaintiff and her husband were confused and were acting as they thought best under the circumstances, but it is unreasonable to expect, and the law does not require, that a train should be stopped every time a person is seen walking on the track ahead. To have done so under the testimony in this case would have necessitated the application of the air brakes a quarter of a mile before reaching the place of the accident. While those in charge of a train may not wilfully or recklessly injure persons upon the railroad track, but must use care to avoid such injury, yet, on the other hand, they have the right to rely upon the presumption that an adult person upon the track will be regardful of his own safety and will get out of the way of the train. [Candee v. Railroad, 130 Mo. 142; 3 Elliott on Railroads (2 Ed.), sec. 1257a, and cases cited.]

We have carefully considered the evidence in this case and, under the most favorable view to plaintiff, there is an entire failure to show actionable negligence. Entertaining these views, we hold that the court should have given the instruction in the nature

of a demurrer to the evidence. Accordingly the judgment is reversed. *Ferriss, P. J.,* and *Brown, J.,* concur.