B. L. FLYNN, Respondent, v. METROPOLITAN
STREET RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, June 3, 1912.

1. **NEGLIGENCE: Humanitarian Rule: Excessive Speed: Pleading.** The allegation of the two acts of negligence in the petition, viz., excessive speed and negligence under the humanitarian rule do not make the pleading bad, on the ground that they are so inconsistent that each destroys the other. Such acts may be alleged in the same petition (Gaedis v. Railway, 161 Mo. App. 225).

2. **HUMANITARIAN RULE: Discovery of Peril.** The beneficent principle of the humanitarian doctrine does not take into consideration the origin of the peril of the plaintiff which culminated in his injury, but whether he was careful or negligent requires of the operator of the car the exercise of reasonable care to discover the peril and avoid the threatened injury.

3. ————: **Two Principal Tests.** In cases involving the humanitarian rule there are two principal tests: First, was the plaintiff in danger of which he did not become aware until too late to save himself and, second, was his peril obvious to a reasonably careful man in the position of the motorman at the time when the latter had a reasonable opportunity to prevent the inury?

4. **NEGLIGENCE: "Last Chance:" Sole Cause.** Where a clear case of "last chance" negligence is presented, such negligence occupies the whole field of culpability and must be considered as the sole producing cause of the injury.

5. **INSTRUCTION: Damages: Maximum to be Recovered.** An instruction which, in effect, told the jury that the maximum of the damages plaintiff could recover under the petition, would be a reasonable assessment of damages, is not erroneous under the ruling in Stid v. Railway, 236 Mo. 382.

Appeal from Jackson Circuit Court.—*Hon. Thomas
J. Seehorn,* Judge.

AFFIRMED.

*John H. Lucas* and *Charles N. Sadler* for appellant.

*H. J. Latshaw* for respondent.

JOHNSON, J.—Plaintiff, a teamster, was injured in a collision between his team and wagon and an electric street car operated by defendant, and alleges that his injury was caused by negligence in the operation of the car. In his petition for damages he charges two acts of negligence, viz., *first,* that defendant ran the car at a high and dangerous rate of speed, and *second,* that the operators of the car saw or should have seen the peril of plaintiff in time to have avoided the injury by stopping the car had they been in the exercise of reasonable care. The answer of defendant is a general denial. A trial of the issues resulted in a verdict and judgment for plaintiff in the sum of three thousand dollars, and the cause is here on the appeal of defendant.

The injury occured in the forenoon of November 9, 1909, on Nineteenth street between Cherry and Holmes streets in Kansas City, at a point twenty-five or thirty feet east of Cherry street. Nineteenth street runs east and west, is paved and its pavement for vehicles is thirty-three feet, six inches wide. Defendant operates a single track street railway along the middle of the pavement and all cars run on that track are eastbound. The distance between the north rail of the track and the curb on the north side of the street is fourteen feet seven inches. Going eastward Nintheenth street crosses Locust, Cherry and Holmes streets in the order named. There is an alley in the block between Locust and Cherry streets and the distance from the alley to Cherry street is 142 feet. Cherry street is about fifty-five feet wide.

Plaintiff was driving a two-horse dirt wagon loaded with a stone that weighed about 3000 pounds. He was going west on Nineteenth street on the pavement north of the track. A two horse wagon belonging to the street cleaning department of the city was standing headed east on this part of the pavement, at a point twenty-five or thirty feet east of Cherry street,

and it became necessary for plaintiff to drive on the track to go around this team and wagon. He deflected his horses towards the track when they were fourteen or fifteen feet east of the standing team and states that just before he did this he looked up and saw a car coming from the west at rapid speed, but concluded that he would have time to go around the obstruction and clear the track before the arrival of the car, and went onto the track, his team and wagon astride the north rail. It was his purpose to keep on the track while passing around the obstruction and to allow only a sufficient clearance space between his wagon and the other. Thinking no danger from the car was to be anticipated he bestowed his attention on the wheels of the other wagon to prevent colliding with them, and did not discover his danger from the car until he looked up and saw it just in front of his team coming on at high speed. At this time the rear wheels of his wagon were about opposite the middle of the other wagon and he was just beginning to turn his horses off the track. A violent collision occurred and plaintiff was severely injured.

Plaintiff's team and wagon were from twenty to twenty-five feet long and the conclusion is reasonable that the distance traveled by the team from the point where they were turned towards the track to the point of collision approximately was forty-five or fifty feet. Another reasonable conclusion from the evidence is that the team walked at a speed of about three miles per hour. There is evidence to the effect that the car was at the alley between Cherry and Locust streets when it became apparent that plaintiff intended to go around the stationary wagon by driving on and along the track and that, therefore, the car was 200 feet or more west of the place of the collision. At that time the speed of the car was from twelve to fifteen miles per hour and witnesses introduced by plaintiff testified that no effort was made by the motorman to stop or

reduce speed. The car was of the double truck type and was equipped with air brakes and other appliances for keeping it under control. It was well filled with passengers and while the rails were wet there is some evidence tending to show they were not slippery. Plaintiff's expert evidence states that the car could have been stopped in fifty-five or sixty feet with safety to the passengers, while experts introduced by defendant say that from 100 to 200 feet would have been required. Plaintiff, who was sixty-four years of age, was sitting on the front end of the wagon bed and made no effort to escape. He explains that the diversion of his attention from the car to the wagon he was passing prevented him from making any effort to escape by jumping off his wagon.

The court refused defendant's instructions in the nature of a demurrer to the evidence and on behalf of plaintiff gave the following instructions: "The court instructs the jury that if you find for plaintiff, then you may allow him such a reasonable amount, not to exceed the sum of $6950, as you may find and believe from the evidence and under the instructions of the court would fairly and reasonably compensate him for the injuries, if any, to plaintiff's left leg or left shoulder, received on November 9, 1909, on East Nineteenth street, between Cherry and Holmes streets, in Kansas City, Missouri, by reason of a collision between his wagon and one of defendant's street cars."

"The court instructs the jury that even though you may find and believe from the evidence in this case that plaintiff was negligent and careless in driving upon defendant's track, under the facts and circumstances in evidence, still if you further find and believe from the evidence that defendant's motorman saw, or by the exercise of ordinary care and caution could have seen, plaintiff with his wagon in a perilous position upon said track, and in a position upon said track where his horses and wagon would necessarily

be struck by an eastbound car, within reasonable time for said motorman to thereafter have stopped his car and with due regard to the safety of the people upon said car, and before striking plaintiff's said horses and wagon, and thus avoided injuring plaintiff, but that said motorman negligently failed to do so, and as a direct result thereof plaintiff's horses and wagon were struck by said car, in direct consequence of which plaintiff was injured, then your verdict must be for the plaintiff.''

"By ordinary care as used in these instructions is meant such care as an ordinarily prudent person would exercise under similar circumstances. And by negligence as used in these instructions is meant a lack or want of said ordinary care."

First, we shall consider the points argued by counsel for defendant in support of their contention that the court should have directed a verdict for defendant.

The first of these points is that the two acts of negligence alleged in the petition, viz., excessive speed and negligence under the humanitarian rule are so inconsistent that each destroys the other and, therefore, the petition should be regarded as stating no cause of action. We disposed of the precise question in the recent case of Gaedis v. Railway, 143 S. W. 565, where we held that such acts are not inconsistent and may be alleged in the same petition. We have nothing to add to what was said in that opinion and refer to it for an expression of the views we hold on this subject.

Next, it is urged that plaintiff's own evidence discloses that his negligence and not any negligence of defendant was the proximate cause of his injury. It will be observed that in his instructions plaintiff abandoned the first charge of negligence, i. e., running the car at excessive speed and submitted the case only on the issue of whether or not his injury was caused

by negligence under the rules of the humanitarian doctrine. Since the verdict was based entirely on the finding that such negligence was the proximate cause of the injury, we shall start with the concession that the peril of plaintiff was created by his own negligence in driving on the track in front of a rapidly approaching car and in suffering his attention to become diverted from the car. Let us see if this concession compels us to reach the conclusion advocated by defendant that the facts and circumstances of the case afford no room for the application of the humanitarian rule.

The beneficent principle of the humanitarian doctrine does not take into consideration the origin of the peril of the plaintiff which culminated in his injury, but whether he was careful or negligent requires of the operator of the car the exercise of reasonable care to discover the peril and to avoid the threatened injury. The principle is not for the benefit of one who with full knowledge of the danger wilfully or wantonly rushes into it. [Kinlen v. Railway, 216 Mo. l. c. 164.] But it must be borne in mind that knowledge of the presence of a force that may or may not be injurious does not necessarily imply knowledge of the actual peril caused by such presence. Frequently the negligent and some times even the careful "have eyes and see not," hold in envisagement all of the elements of a dangerous situation but are oblivious to the danger. Such a person so entering into peril of his own volition cannot be called wilful or wanton, but only negligent and he becomes an object of solicitude to the vital principle of the humanitarian rules.

The inference is clear that plaintiff passed from a position of safety to one of danger when he turned his horses on to the track. The car then was, perhaps, 250 feet away and there was nothing to prevent the motorman, who could have stopped within one hundred feet, from seeing and knowing that plaintiff was

driving into the path of the car with a heavily loaded and slowly-moving vehicle, and we say that the negligence of plaintiff in acting on the erroneous supposition that he could drive around the obstruction in safety did not make him an outlaw and justify the motorman in casting all care to the winds, and without putting forth any effort to save him, deliberately run with unabated speed to a collision with the team and wagon.

There are two principal tests in cases of this character: First, was the plaintiff in danger of which he did not become aware until too late to save himself? And, second, was his peril obvious to a reasonably careful man in the position of the motorman at a time when the latter had a reasonable opportunity to prevent the injury? That plaintiff was oblivious to his danger is manifest and we think all of the appearances combined to proclaim to the motorman the existence of a real danger and the inability of plaintiff, on account of his inattention, to save himself. In the first place the motorman must have realized that in going on at a speed of fifteen miles per hour—and he states that was the speed of the car—a collision would be inevitable unless he reduced speed. The initial movement of the team disclosed the purpose of plaintiff to drive along the track and the slow speed of his team and the visible directing of his attention to the wagon he was passing were outward obvious signs that he was neglecting his own safety and would be injured if the motorman made no effort to save him.

The evidence of plaintiff presents a clear case of "last chance" negligence and as we have said in other cases, such negligence, when existent, occupies the whole field of culpability and must be considered as the sole producing cause of the injury. The facts of this case are essentially different from the facts in the cases relied on by defendant, e. g., Barnard v. Railway, 137 Mo. App. 684, where the evidence dis-

closed that the plaintiff was not oblivious to the danger, nor was the actual danger apparent to the motorman until it was too late to avoid the injury.

The court did not err in overruling the demurrer to the evidence.

Objection is offered to the first instruction given at the request of plaintiff on the ground that, in effect, it told the jury that $6950, the maximum of the damages plaintiff could recover under his petition, would be a reasonable assessment of damages. Practically this is the same question ruled on in the case of Stid v. Railway, 236 Mo. 382, 139 S. W. Rep. 179; and following the decision in that case we hold the objection not well taken.

A second objection to the instruction is dismissed with the observation that the alleged error is shown by the verdict to have been harmless and, therefore, cannot be considered as a ground for disturbing the judgment.

The criticism of plaintiff's second instruction is answered in what we have said in ruling on the demurrer to the evidence. Complaint is made of the refusal of the court to give certain instructions asked by defendant but we find they were properly refused. They present the issue of contributory negligence as a defense to a cause of action solely based on a breach of defendant's humanitarian duty. This defense is not pleaded in the answer and might be dismissed on that ground, but we will add that contributory negligence that co-operated in the production of the perilous situatoin is no defense to the negligence of the defendant in failing to exercise reasonable care to discover the peril and avoid the injury.

We find no prejudicial error was committed in the rulings on the admission of evidence, nor does there appear to be any good ground for the point that the verdict was excessive. The case was fairly tried and the judgment is affirmed. All concur.