WILLIAM SMITH, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, March 3, 1913.

1. NEGLIGENCE: Street Railways: Humanitarian Rule. The plaintiff sued to recover damages for personal injuries sustained when an electric street car struck his wagon. Plaintiff was driving a beer wagon south on the west track of the defendant's street car line, when a car came up behind him, and, as other vehicles prevented him from turning to the right, he was compelled to turn to the left and go upon the east track. As soon as he could get a clearance he pulled back to the right to let a northbound car pass, which was then about 200 feet away. The car never slackened its speed but came on at a high rate of speed and struck the hub of the wagon, whereby the plaintiff was thrown out of the wagon to the curb and injured. Held, that the plaintiff rightfully recovered under the humanitarian rule.

2. ———: ———: **Duty of Motorman.** A motorman seeing a wagon approaching his moving car, has a right to indulge in the presumption that the driver will leave the track in time to avoid a collision as his duty requires him to do, until a reasonable man in the position of the motorman could see that the driver with eyes open was heedlessly and wantonly permitting his position of safety to merge into one of danger.

3. **INSTRUCTIONS: Damages: Future Pains.** An instruction is not erroneous, which entitles one to recover for such future pains as he is reasonably certain to suffer, and not for merely possible or even probable suffering.

Appeal from Jackson Circuit Court.—*Hon. Jas. E. Goodrich*, Judge.

AFFIRMED.

*John H. Lucas* for appellant.

*Frank M. Lowe,* and *Charles Shannon* for respondent.

JOHNSON, J.—Plaintiff sued to recover damages for personal injuries he alleges were caused by negligence of defendant. The cause of action pleaded in the petition and submitted to the jury is founded on a negligent breach of what is known as the humanitarian rule. The answer is a general denial. The cause is before us on the appeal of defendant from a judgment of five thousand dollars recovered by plaintiff in the circuit court. Counsel for defendant argue that the court erred in not sustaining the demurrer to the evidence and we shall state the facts material to the issues thus arising.

The injury occurred late in the afternoon of September 7, 1907, on Union avenue in Kansas City. This street is in front of the Union passenger station and its general course is from northeast to southwest. Witnesses speak of it variously as running east and west and north and south, so that the terms north

side and west side are used synonymously as are also the terms south and east side. For convenience we shall speak of that part of the street in front of the station as running north and south. Going north from the station the street is on an up-grade and runs straight to a bridge over railroad tracks where it deflects towards the east. Going south the street runs on a straight line to the south end of the station where it turns towards the west. Defendant has a double track street railway on this street and was operating a northbound electric car on the east track. The car collided with a beer wagon being driven by plaintiff and inflicted the injuries in controversy. The wagon was of the type used by breweries in carrying keg beer but was loaded with cases of bottled beer which were being taken to an express office at the south end of the station. Plaintiff drove southwest on Union avenue on the west track until after he crossed the bridge when a car coming up from behind compelled him to leave that track to allow it to go by. Other vehicles prevented him from turning off to the right and he pulled his team to the left and drove on and along the east track, intending to return to the west track as soon as he could "get a clearance" that is, as soon as other vehicles on that part of the street would afford him a passageway. He was driving in a slow trot and traveled fifty feet or more on the east track before he pulled towards the right and started to leave that track. About this time he observed a northbound car approaching on the east track. The car was 175 or 200 feet away and was traveling at a speed estimated by other witnesses at ten or twelve miles per hour. Plaintiff testified:

"As soon as I saw this car—I saw this car about 175 or 200 feet away from me—I don't know just exactly the distance, but I started to get off the track and get from this car's way. I pulled my horses over and urged them along as much as I could, and I seen

the car was coming so swiftly, I even whipped the horses, and I got the front wheels over and the hind wheel slipped, and it slid around until the car came right in contact with my wagon going like that. It hit my hind wheel and that is the last I remember.''

Witnesses introduced by plaintiff state that the car did not slacken speed as it neared the wagon; it struck the hub of the left hind wheel and threw the rear end of the wagon around towards the west in a way to point the horses towards the southeast instead of the southwest. Two beer cases were thrown off the wagon and plaintiff was pitched from his seat towards the southeast and thrown to the curb on the east side of the street. Witnesses for defendant state there was no collision between plaintiff's wagon and a street car but that plaintiff was driving fast and recklessly and drove into the curbstone.

Counsel for defendant attempt to avoid the legal consequences of this apparent conflict in the evidence by taking the position that the version of the injury given by plaintiff and his witnesses is so manifestly false and so opposed to physical law as to be barren of probative strength and value: It is contended that the testimony of plaintiff's witnesses is self-contradictory and obviously false as to material facts. For example, an eyewitness who was standing near the scene of the injury stated that plaintiff's team was headed towards the west track and that the hind wheel was sliding along the west rail of the east track when the street car, with unslackened speed, struck the hub and threw the wagon around and pitched plaintiff to the curb on the east side of the street (the curb was seven or eight feet from the east track.) On cross-examination the witness said:

''Q. And after the car had gone on up, what did you see then? A. I seen the horses and wagon turn over here, going right back to the south, the horses did, but the man tumbled to the south.

"Q. You say it didn't stop at all? A. I didn't see it stop.

"Q. After it had gone on up, so that you could see the horses and wagon, the man was still on the wagon? A. Coming cater-cornered across.

"Q. After it had gone on up, so that you could see the horses and wagon, the man was still on the wagon? A. Yes, sir."

Defendant urges that if plaintiff remained in his seat until after the car had passed on he could not have been thrown from the wagon by a collision, but this argument is based on a misunderstanding of the idea the witness was intending to convey. The interrogation of the witness continued as follows:

"Q. And the horses were then coming cater-cornered across towards the Union depot? A. Just as the car passed, the hind end of the wagon was swung around and the horses pulled right in behind the car, and the man tumbled over.

"Q. So that the man did not fall from the wagon until after the car had gone on out of the way? A. I know the man fell off the wagon; the wagon swung around just as the hind end of the car on the west side passed, the wagon came right around and throwed him over."

The meaning of the witness is clear—that the impact of the collision was the force that caused plaintiff to fall and that there was no break in the casual chain connecting that force with its ultimate result. We do not find any material inconsistencies in the evidence of plaintiff, certainly not any that would not be issues of fact for the jury to determine. Nor can we agree with defendant that plaintiff's account of his injury is opposed to physical law. Considering the relative positions, weight and speed of the respective vehicles, it seems reasonable to say that a glancing blow delivered by the heavier and faster vehicle on the rear wheel of the other would have the very ef-

fect described by the witnesses and would project the body of the driver of the wagon in the direction of plaintiff's fall. We are not prepared to declare as a matter of law that plaintiff's account of the injury is an impossible or unreasonable statement.

But it is contended that the motorman was justified in assuming that plaintiff would clear the track in time to allow the car to pass in safety and that there was no appearance of peril until the unexpected happening of the sliding of the wagon wheel on the rail which kept the wagon in the path of danger after it should have left the track in safety. There is a suggestion in this argument of a Procrustean effort to make the facts of the present case fit the rule applied by us in the cases of Hebeler v. Railway, 132 Mo. App. 551, and Barnard v. Railway, 137 Mo. App. 684. Those cases were properly decided by application of the rule that a motorman seeing a wagon approaching his moving car has a right to indulge in the presumption that the driver will leave the track in time to avoid a collision as his duty requires him to do, until a reasonable man in the position of the motorman could see that the driver with eyes open was heedlessly and wantonly permitting his position of safety to merge into one of danger.

But that rule does not fit the conduct of either plaintiff or the motorman in the present instance. Plaintiff was not heedlessly or wantonly imperiling himself. With a car two hundred feet away he had a right to drive on the track under exigent circumstances and, thereafter, was entitled to a reasonable opportunity to clear the track. He had as much right to use that part of the public street as defendant had and his full duty was to avoid an unnecessary or unreasonable obstruction of the passage of the street car. He had a right to presume that the motorman would reduce speed if that became necessary to prevent a collision. But since plaintiff has based his

right to recover on the humanitarian rule it is not necessary to go into a detailed analysis of his conduct. The important consideration is the conduct of the motorman. He had an unobstructed vision of the approach of plaintiff and we say the appearances disclosed to him at a time when he could have stopped the car or, at least, reduced its speed and averted the injury, were strongly suggestive of danger to plaintiff if he continued to advance with unabated speed. Here was a busy street well filled with vehicles, a wagon compelled to give way to a car coming from the opposite direction is turned onto the track and driven towards the motorman in a manner and under circumstances indicating that it may not succeed in getting out of the way of the approaching car unless the speed of the car is reduced. Would a man of ordinary prudence in the position of the motorman, seeing these things and seeing the driver of the wagon whip his horses to get out of the way, calmly and deliberately withhold the saving motion of the hand on the presumption that the driver would succeed in clearing the track? We say the jury were entitled to indulge in the inference that the motorman with an appearance of danger before him negligently sported with the safety of plaintiff at a time when he had a fair opportunity of averting a collision.

The demurrer to the evidence was properly overruled.

Complaint is made of the first instruction given at the request of plaintiff, on the ground that it includes in the hypothesis, on which a verdict for plaintiff is directed the finding, that plaintiff was in "imminent peril" of being struck by the car, etc. The point is that "the evidence does not show that plaintiff was at any time in a position of imminent peril." We think it does and that the motorman saw that peril when he might have saved plaintiff by reasonable exertion.

 Objection also is made to the following part of the instruction on the measure of damages: ". . . you should assess his damage in such amount as you believe from the evidence will be a fair compensation to him for the pain of body and mind, if any, which he has suffered, occasioned by his injuries in question, *and for such pain of body and mind, if any, as in all probability he will suffer in the future, occasioned by such injuries.*"

Plaintiff is entitled to recover for such future pain as he is reasonably certain to suffer and not for merely possible or even probable suffering. We think the italicized language clearly excludes mere possibilities or probabilities and properly restricts the assessment. [DeVoy v. Transit Co., 192 Mo. l. c. 206; Dean v. Railroad, 199 Mo. 386.]

Other points have been examined and are ruled against defendant. There is no prejudicial error in the record and the judgment is affirmed. All concur.