WILLIAM A. WOODIS, Appellant, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Respondent.

St. Louis Court of Appeals. Opinion Filed May 7, 1918.

1. **STREET RAILROADS:** Negligence: Contributory Negligence: Operation of Cars: Duty to Warn: Question for Jury. Evidence *held* to present a question for the jury to say whether or not the failure of a street car motorman to ring the gong and give warning to plaintiff, who started across the track thinking he had time to clear the car, was negligence.

2. ———: ———: ———: **Last Chance Doctrine.** Where plaintiff's testimony shows that when he saw the car some 170 feet away he did not realize its speed, and supposed he could cross the street before it would reach him; and added to that the testimony that the car could have been stopped within forty feet, and that there was sufficient light at that place for plaintiff to be seen by the motorman at a much greater distance, made it a question for the jury to say whether or not the motorman saw, or by the exercise of ordinary care could have seen, plaintiff in peril, and whether liability should be cast upon defendant as for negligence on the part of the motorman in failing to exercise ordinary care in using the means at hand to stop or slacken the speed of the car to avoid injuring plaintiff, under the last chance doctrine.

Appeal from the Circuit Court of the City of St. Louis.—*Hon. J. Hugo Grimm,* Judge.

REVERSED AND REMANDED (*with directions*).

*John J. O'Connor* for appellant.

(1) When those operating a street car sees or by the exercise of ordinary care could see a person on the track in front of said car, in a position of danger, it becomes the duty of the operator to stop the car and avoid striking such person, where the same can be done by the exercise of ordinary care with safety to the car and those on it, after the operator sees the person's danger of being hit. And a failure under such circumstances, to so stop the car, renders the owner liable for any injury done to such person if he be struck by such car. Quinley v. Springfield Traction Co., 180 Mo. App. 287; Zander v. St. Louis Transit Co., 206 Mo. 445; Felver v. Cent. Elec. R. R. Co., 216 Mo. 203; Feeney v. Railroad Co., 123 Mo. App. 420; Cole v. Metropolitan St. Ry. Co., 133 Mo. App. 440; Prenderville v. St. Louis Transit Co., 128 Mo. App. 595; Taylor v. Met. Street Ry., 256 Mo. 214; McGinnis v. Railroad, 268 Mo. 669. (2) Where the cause rests on the humanitarian doctrine, as in this cause, contributory negligence is eliminated from the cause, because the negligence of the plaintiff, if any,

is not the proximate cause of the injury, the other fellow had the last chance to avoid the injury and neglected to embrace it. Johnson v. St. Joseph Ter. R. R. Co., 203 Mo. 381; Taylor v. Met. Street Ry., 256 Mo. 214. (3) It is only when the person goes on the track so close to an approaching car that the operator cannot, with the means at hand, stop the car before striking such person, that the humanitarian rule does not apply. And this was all that was held in the case of Reeves v. Kansas City & Chicago Railway Co. 251 Mo. 169.

*T. E. Francis* and *S. P. McChesney* for respondent.

The trial court properly sustained the defendant's demurrer to the evidence. (1) Appellant cannot recover on a failure to warn, because having seen the car approaching, a failure to sound the gong could not have been the proximate cause of the collision. Peterson v. Railroad, 192 S. W. 938, 940. (2) Appellant cannot recover under the humanitarian rule. (a) Because he has not pleaded nor proved said rule. Knapp v. Dunham, 195 S. W. 1062. (b) Because said rule does not apply where one sees a car approaching and goes on the track and is struck. Kinlen v. Railroad, 216 Mo. 145; Pope v. Railroad, 242 Mo. 232; Reeves v. Railroad, 251 Mo. 169. (c) Because said rule does not apply, because the respondent's motorman had the right to presume that appellant would step off the track before the car got to him. Pope v. Railroad, 242 Mo. 232.

BECKER, J.,—This is an action to recover damages for personal injuries. At the close of plaintiff's case the court, at the instance of the defendant, instructed the jury that under the law and the evidence plaintiff could not recover and their verdict must be for the defendant; whereupon plaintiff took an involuntary nonsuit with leave to set same aside. Plaintiff filed his motion to set aside the judgment of nonsuit and

grant a new trial, which was overruled by the court, and plaintiff brings this appeal.

In the city of St. Louis, Missouri, Mississippi avenue runs north and south, and Hickory street runs east and west. On Mississippi avenue where it intersects Hickory street there are double lines of track belonging to the defendant company which operates its electric street cars thereon. There is quite a steep grade on Mississippi avenue from Park avenue, which is two blocks west of Hickory street, to Chouteau avenue which is two blocks south of Hickory street. The plaintiff had formerly been employed by the defendant as a conductor of a street car which passed over these streets.

The record discloses that on the 6th day of February, 1914, at about six o'clock in the evening, when by reason of the darkness the street lamps had been lighted, the plaintiff stood on the curb on the southeast corner of Hickory street and Mississippi avenue intending to cross over to the northwest corner of said streets at which corner he intended to board a southbound car. Plaintiff while so standing on the curb looked south up Mississippi avenue and saw a car of the defendant company approaching some distance away, and, in the belief that he had plenty of time to get across the tracks to the opposite corner started from the curb and walked rapidly in "a jog" or "dog-trot" west to the east rail of the northbound track on the Mississippi avenue and proceeded along said rail. In view of the testimony most favorable to plaintiff the car was about 170 feet away from him when he went upon the track; and Hickory street is said to be sixty feet in width. When plaintiff was within three to five feet of the north line of Hickory street he was struck by the front end of the car and sustained injuries.

Plaintiff did not turn to look at the car after he left the curb. The testimony adduced is to the effect that the motorman did not ring the bell or give any warning prior to the time the car struck the plaintiff

and that the car traveled 100 feet from the point where plaintiff was struck before stopping. The car was running ten to twelve miles per hour and according to a witness for plaintiff could have been stopped within 40 feet under the conditions as detailed in the case.

The learned trial judge at the close of plaintiff's case when defendant offered its demurrer to the evidence, overruled same; but while the first witness adduced by defendant was upon the stand the court became convinced that it had erred in so overruling defendant's demurrer and thereupon reversed its said ruling and sustained the demurrer. The plaintiff then took a nonsuit with leave to set same aside.

Defendant asserts that the action of the learned trial judge was correct in that plaintiff's case falls within the rule as laid down in Peterson v. United Rys. Co. (Mo.), 193 S. W. 938; in which our supreme court, speaking through GRAVES, J., says: "The purpose of sounding a gong or ringing a bell is to give notice of the approaching car. If the party has this notice, without the sounding of the gong or ringing of a bell, we have universally declared that the failure to sound gong or ring bell is not the proximate cause of that injury, and should not be made the predicate for recovery. Under such circumstances the sounding of a gong or the ringing of a bell could not impart more notice than the party already had. If one, at a crossing, sees a rapidly approaching train no amount of whistling or bell ringing will give him more notice than that which his eyes have brought home to him. Indeed it would tend to confuse rather than help such a person. But be this as it may, it is clear that the submission of this ground of negligence to the jury in this case was error, for which the judgment must be reversed and the cause remanded." In the Peterson case, however, the plaintiff was sitting in an automobile, the engine of which had ceased to work and the automobile came to a stop on the tracks of the street car company. The plaintiff saw the car approaching at the moment

the automobile stopped upon the track, the car being then distant about 600 feet running down grade at a speed of twenty to twenty-five miles per hour, and plaintiff, in the Peterson case, saw the car and its movements up until about the time it struck the automobile, and, according to plaintiff's own testimony, the car was coming so fast he did not know what to do, with the result that he remained in the automobile and suffered injuries when the car ran into it. It is therefore obvious that in the Peterson case nothing could have been accomplished by the ringing of the bell or giving warning of the approach of the car because the plaintiff saw the car at all times in its rapid approach to the spot where the automobile was stalled and was therefore fully aware of the immediate and impending danger. But in the case at bar the plaintiff left the curb, and if plaintiff's testimony is true, proceeded to the track and along it in the full belief that he would have ample time to cross the street and over the tracks before the approaching car would reach him, and consequently plaintiff did not at any time look back to see how near the approaching car had come to him, relying upon his judgment that he could cross over in safety. Can it be said in such a case that the ringing of the bell or the giving of some warning of the near approach of the car would not have served some purpose? We think not, but rather that under the facts in this case, having before us solely the testimony for plaintiff, and viewing it as we must on a demurrer, as true, and in the light most favorable to him, we must assume that the plaintiff though he had seen the approaching car, was not aware of any immediate danger to himself, and that he therefore proceeded along plaintiff's track oblivious to the close proximity of the car. Undoubtedly then the very fact that no bell or gong was sounded kept him from becoming aware of his immediate danger. We believe that under a state of facts such as is presented by plaintiff's case, if true, had the gong in point of

199 M. A.—23.

fact been sounded, it is but fair to infer that the plaintiff would have been awakened thereby to a realization of his immediate peril and would have stepped off the track to safety. We are constrained to hold that this question of negligence should have been submitted to the jury.

It is argued with great earnestness that the humanitarian rule is not applicable to plaintiff's case and in support thereof we are cited the following: "The humanitarian doctrine only applies and authorizes a recovery where the injured person is ignorant or oblivious to the impending danger; but if he knew of the approaching danger, then clearly he would be guilty of such contributory negligence as would prevent a recovery, whatever the conduct of the agents in charge of the train might be." [Kinlen v. St. Ry. Co., 216 Mo. 145, l. c. 164, 115 S. W. 523, and cases there cited.] Of such rule it has been held in Pope v. Ry. Co., 242 Mo. 232, 146 S. W. 790, that: "The foregoing language must be understood as applying to a case in which a person is upon the track at a place where he could safely have gotten off and out of danger when conscious of the train's approach."

As is so often the case the quoting of a single sentence or paragraph from an opinion does not, when taken by itself and out of the opinion, express either correctly or fully the principal of law which has been enunciated therein. And so in this case the quotation, though on the surface and when read by itself would seem to be authority supporting the action of the learned trial judge in sustaining the defendant's demurrer at the close of the plaintiff's case, yet when one reads the entire case it is obvious that such was not the holding in the said Kinlen case. In the same paragraph and preceding the sentence quoted from the Kinlen case, supra, we find the following: "The humanitarian doctrine does not go so far as to authorize a recovery where the injured party knowingly drives in front of an approaching car, *and when he knows he will not have time to cross in safety.* (Italics

ours). To so hold would be equivalent to abolishing the law of contributory negligence. Yes, it would do more than that, for such ruling would make the company absolutely liable when a party is injured in his attempt to cross in front of the approaching car when he knows he has not the time in which to do so; and that, too, when the company is guilty of no negligence whatever, for the obvious reason that if he has not sufficient time in which to cross in front of the car in safety, then as a necessary corollary thereto the motorman would not have the time in which to stop or slaken the speed of the car and thereby avoid the injury. The law is well settled that where one *even negligently* places himself in front of a rapidly approaching train and is injured thereby, he cannot recover if the employees in charge of the train used reasonable care to avoid the injury, after they discovered his perilous position, or by the exercise of ordinary care might have discovered it. [Harlan v. Ry. Co., 64 Mo. l. c. 483.] That being unquestionably the law, then how much stronger should the reason be for holding he cannot recover when he knowingly and wilfully steps or drives in front of a rapidly approaching car? [Prewitt v. Eddy, 115 Mo. 283, 21 S. W. 742.] Nor will the law permit a recovery where the injured party knowingly places himself in a place of danger and knowingly and wilfully permits the train to strike him, even though the employes in charge thereof could have prevented it by the exercise of ordinary care.''

Even under the construction of the Kinlen case as is contended for by the learned counsel for defendant, we hold that it is not authority for the action of the court in sustaining defendant's demurrer at the close of plaintiff's case. It is perfectly clear that there is no evidence upon which to predicate a finding that plaintiff knew he did not have time to cross Hickory street in safety. And his evidence makes it appear that he was oblivious to the *impending danger*, though he knew that the car was somewhere behind him.

Plaintiff's testimony, which for the purposes of this case we are bound to consider as true, shows that when he saw the car some 170 feet away he did not realize its speed and supposed he could cross the street before it would reach him, and added to that the testimony that the car could have been stopped within forty feet, and that there was sufficient light at that place for plaintiff to be seen by the motorman at a much greater distance, made it a question for the jury to say whether or not the motorman saw, or by the exercise of ordinary care could have seen, plaintiff in peril, and whether liability should be cast upon defendant as for negligence on the part of the motorman in failing to exercise ordinary care in using the means at hand to stop or slaken the speed of the car to avoid injuring plaintiff, under the last chance doctrine. [See Flynn v. Ry. Co., 166 Mo. App. 182, 148 S. W. 122; Ingino v. Met. St. Ry. Co. (Mo. App.), 179 S. W. 771; Nufer v. St. Ry. Co. (Mo. App.), 182 S. W. 792; Strother v. Dunham (Mo. App.), 193 S. W. 883.]

From what we have said above the court erred in sustaining defendant's demurrer to the evidence and in overruling the plaintiff's motion to set aside the nonsuit and grant him a new trial. The said judgment is accordingly reversed and the cause remanded with directions to sustain the plaintiff's motion to set aside the nonsuit and grant a new trial. *Reynolds, P. J.,* and *Allen, J.,* concur.