AMERICAN AUTOMOBILE INSURANCE CO., Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals.   Opinion Filed November 6, 1918.

1. **STREET RAILROADS: Collision with Automobile: Contributory Negligence of Chauffeur: Failure to Look.**   Where an automobile chauffeur approaching a street intersection was given a signal to cross by the traffic policeman, from his failure to observe the movements of an approaching street car, when the car was about 100 feet from the crossing at the time of the signal, it cannot be said, as a matter of law, that the chauffeur was guilty of contributory negligence in proceeding to cross the street car tracks without paying further heed to the street car.

2. **APPELLATE PRACTICE: Rule of Review: Demurrer to Evidence.**   The appellate court in passing upon the ruling of the trial court upon a demurrer to the evidence, will view the evidence in the light most favorable to plaintiff, giving plaintiff the benefit of every reasonable inference that may fairly be drawn therefrom.

3. **STREET RAILROADS: Collision with Automobile: Action for Damages: Instructions.**   In an  action against a street railroad for injuries to an automobile caused by a collision with a street car, an instruction which, in substance, required the jury to find that the traffic officer gave a signal or direction for the street car to stop and permit the automobile to pass, and that the motorman saw the signal, or by the exercise of ordinary care under the circumstances would have seen it, but failed to comply therewith, and then tells the jury that if they "further find from the evidence that such failure of the motorman in such respect caused the street car to collide with the automobile and damage it," and further find that such failure to obey the signal of the traffic officer, if given, "was failure on the part of the motorman to ex-

318    200 MISSOURI APPEAL REPORTS,

Am. Auto. Ins. Co. v. United Rys. Co. of St. Louis.

ercise ordinary care for the safety of the automobile," then/ to find for plaintiff, provided the jury further find that the driver of the automobile was at the time exercising the highest degree of care for his own safety and that of the automobile, was not objectionable as failing to require the jury to find that the motorman could have stopped his car after the giving of the signal by the traffic officer.

4. ———: ———: ———: ———.    In such action, an instruction to the effect that the motorman's failure to obey the traffic officer's signal, if given, was a failure to exercise ordinary care, *held* proper, where the evidence sufficed to warrant a finding that the street car could have been stopped after such signal was given in time to avoid the collision.

5. ———: ———: Proximate Cause: Failure to Ring Bell: Instructions. Likewise, it was not reversible error, under the circumstances, to submit to the jury, as a predicate of liability, the failure of the motorman to ring his bell, though the automobile chauffeur, having seen the car 100 feet north of the crossing, proceeded to cross, in obedience to the signal, without further observing the car.

6. **TRIAL PRACTICE:** Instructions: Withdrawing Issue of Negligence. Where plaintiff alleged the violation of ordinances, but abandoned such assignments of negligence, defendant was entitled to an instruction withdrawing such assignments from the jury.

7. ———: ———: Request.    Where the plaintiff, in such action, abandoned an assignment of negligence basing a recovery upon the violation of "east and west right of way ordinance," the refusal of a requested instruction withdrawing from the jury the motorman's failure to give the automobile the right of way over the street car was not error, such instruction being too broad and indefinite, and, *held*, regardless of the particular language employed in the petition, if appellant desired an instruction given for the purpose mentioned, it was its duty to offer a clear and definite instruction withdrawing the issue in question, and which would not be readily susceptible to a construction at variance with instructions covering the live issues in the case.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Kent K. Koerner,* Judge.

AFFIRMED.

*T. E. Francis, S. P. McChesney* and *Chauncey H. Clarke* for appellant.

(1) The court erred in refusing to give the instruction in the nature of a demurrer to the evidence

requested by defendant, for the reason the chauffeur was guilty of contributory negligence as a matter of law in driving upon the track immediately in front of a moving car without looking. Stotler v. C. & A. Ry. Co., 204 Mo. 619, 639; Laun v. St. L. & S. F. R. Co., 216 Mo. 563. (2) Plaintiff's instruction No. 1, based on the theory that the motorman failed to comply with the ordinance to stop his car pursuant to the traffic officer's signal, is erroneous for the following reasons: (a) It was unsupported by the evidence, in that no showing was made that the motorman was able, in the exercise of ordinary care, to stop the car in time to avoid the collision after the signal was given; in fact, all the evidence was that the motorman was unable to stop his car after the signal to stop was given. Roseman v. U. R. Co., 197 Mo. App. 337. (b) It failed to submit to the jury, as a condition precedent to a verdict thereunder, the question as to the ability of the motorman to stop with the appliances at hand, permitting a recovery if the jury found as a matter of fact that the motorman failed to stop his car, irrespective of his ability so to do. The finding of the condition that the motorman was able to stop after the signal was given was a condition precedent to plaintiff's right to recover; otherwise such failure would not be the proximate cause of the collision. Delfosse v. U. R. Co., 201 S. W. 860, 862. (c) It assumes a controverted issue in the case, viz, that the motorman was able to stop after the signal was given. Ganey v. K. C., 259 Mo. 654, 663; Wease v. Tool Co., 187 Mo. App. 716, 719; Dority v. Railroad, 188 Mo. App. 365, 374. (d) The driver's contributory negligence barred a recovery thereunder. Stotler v. C. & A. Ry. Co., 204 Mo. 619, 639; Laun v. St. L. & S. F. R. Co., 216 Mo. 563, 580. (3) The court erred in giving plaintiff's instruction No. 2, predicated on failure to sound the gong, for the following reasons: (a) Failure to sound the gong was not the proximate cause of the collision, for the reason that the only purpose in sounding the gong is ta attract

attention and give warning of the car's approach, and the chauffeur, having seen the car approaching, had already had his attention attracted to the approach of the car. Peterson v. Railroad, 270 Mo. 67, 74; Murray v. Transit Co., 176 Mo. 183, 189; Mockowik v. Railroad, 196 Mo. 550, 569. (b)    The driver's contributory negligence barred a recovery under this assignment. Stotler v. C. & A. Railroad Co., 204 Mo. 619, 639; Laun v. St. L. & S. F. Railroad, 216 Mo. 563, 580. (4)    The court erred in refusing to give defendant's instruction marked "F," withdrawing from the jury plaintiff's assignment of negligence predicated on the east and west right-of-way ordinance, for the reason there was no substantial evidence adduced to support it, in that, although pleaded among the four other assignments of negligence, this ordinance was not introduced in evidence. Peterson v. Railroad, 183 Mo. App. 715, S. C. 270 Mo. 67, 74; Roseman v. U. R. Co., 197 Mo. App. 337, 342; Allen v. Lumber Co., 171 Mo. App. 492, 503; Chicago, etc., Railroad v. Kroloff, 217 Fed. 525.

*Bryan, Williams & Cave* for respondent.

(1)    The driver of the automobile was not guilty of negligence—certainly not as a matter of law. He had a right to assume that the street car would obey the traffic officer's signal and allow him to pass. Dennison v. North, etc., Co., 22 Pa. Super Ct. 219; Gittings v. Schenuit, 122 Md. 282; Foster v. Frank Parmlee Co., 179 Ill. App. 21; Canfield v. New York Trans. Co., 112 N. Y. S. 854; Fusili v. Mo. Pac. Ry. Co., 45 Mo. App. 535-540; Yonkers v. Railroad, 182 Mo. App. 558; Note—L. R. A. 1917 B, 137, on Effect of Traffic Officer's Signal; Note—15 L. R. A. (N. S.) 803, Effect of Flagman's Signal; Note—L. R. A. 1916 D, 788, Effect of Automatic Signal; Note—L. R. A. 1916 E, 821, Effect of Open Gates at Crossing. (2)    The assignments in defendant's motion for a new trial, that the court "erred in giving each and every instruction given on behalf of plaintiff," and "in refusing each and every

instruction asked by the defendant and refused by the court,'' are too general and indefinite to preserve for review such error, if any. They amount to no more certainly than an objection to evidence as ''incompetent, irrelevant and immaterial'' which is admittedly insufficient. Lampe v. United Railways Co., 202 S. W. 438; St. Louis Dairy Co. v. Northwestern Bottle Co., 204 S. W. 281. (3) Plaintiff's instruction No. 1 was not' erroneous as (a) unsupported by the evidence, or (b) as failing to submit to the jury any condition necessary to plaintiff's recovery, or (c) as assuming any fact necessary to plaintiff's recovery, for the following reasons: (a) There was evidence clearly showing that the motorman could, after the signal was given, in the exercise of ordinary care, stop the car in time to avoid the collision. Plaintiff's evidence shows that the car was 100 feet away and just leaving Lucas avenue, and defendant's evidence shows that the car was proceeding slowly, in fact, came almost to a standstill, before reaching Washington avenue (Testimony of Johnson, Abs., p. 52.) (b) It does not assume that the motorman was able to stop after the signal was given but, contra, expressly requires the jury to find, as a condition to plaintiff's recovery ''that such failure to obey the direction of the traffic officer and stop his car . . . was failure on the part of the motorman to exercise ordinary care for the safety of the automobile.'' Which it could not have found unless it found that the car could have been stopped. (c) Plaintiff's instruction No. 1 embodied all the conditions essential to plaintiff's case and also negatived the only affirmative defense pleaded the driver's negligence. That it is not required to negative any defenses not so pleaded requires no citation of authorities. (4) The court did not err in giving instruction No. 2 for plaintiff, for the reason that, while, in the ordinary case, where, as here, one sees an approaching car, the sounding of a gong to attract his attention can serve no purpose, still, under the facts of the instant case, there being evidence that after the driver of the

automobile saw the car and started to proceed, relying on the signal of the traffic officer, there was still time for him to stop before getting on the track, the sounding of the gong could have attracted his attention to the fact that the car was not going to obey the signal of the traffic officer, and give him the right of way. And the failure to sound it might thus have been a proximate cause of the collision. (5) The court did not err in refusing defendant's instruction F for the following reasons: (a) The refusal of an instruction withdrawing certain assignments of negligence from the consideration of the jury, when there is no evidence to support it, is non-prejudicial, if the jury, as in this case, is correctly instructed as to what it must find in order to find for the plaintiff. (b) Again, instruction F, as drawn, could not without error be given, under the issues of this case. For, while it might have been proper to withdraw the right-of-way ordinance, itself, from the jury's consideration, the real issue in the case was the failure of the defendant to give the right of way to the automobile in pursuance of the traffic officer's signal under ordinance known as section 1351, which ordinance was introduced in evidence. And the instruction, as offered, withdraws from the jury's consideration the failure to give the automobile the right of way "in violation of the ordinances aforesaid," thus including both ordinances and taking from the jury the issue as to failure to obey the officer's signal and give the automobile the right-of-way.

ALLEN, J.—This is an action to recover for damage to an automobile by reason of being struck by one of defendant's street cars in the city of St. Louis. The automobile belonged to one Bemis and was being driven by his chauffeur at the time of the casualty. Plaintiff, an insurance company, had previously insured the automobile against loss or damage by collision, and having, under its policy, paid the owner $1000 for the loss thus sustained by him, sues as the assignee of the cause of action. There was a verdict and

judgment for plaintiff in the sum of $1000, and defendant appeals.

The petition, after making certain formal allegations, pleads the so-called vigilant watch ordinance of the city of St. Louis, and also pleads other ordinances of said city, to-wit, sections 1326, 1341, 1351 and 1356 of the Revised Code of St. Louis, 1912. And for its cause of action plaintiff alleges that on October 21, 1913, the servant of one Bemis was driving an automobile belonging to the latter ''in a northerly direction on Grand Avenue turning westwardly into Washington Avenue, both public streets in the city of St. Louis; and that defendant's servants in charge of and operating one of defendant's street cars in a southerly direction along said Grand Avenue, so negligently operated said car that it collided with the said automobile, turned it over and damaged it to the sum of sixteen hundred ($1600) dollars.''

The assignments of negligence on defendant's part, whereby, it is averred, the damage to the automobile was caused, are specifically set out as follows:

1. ''That the motorman or other person in charge of and operating said street car failed to keep a vigilant watch for the said automobile as it was on the track of said car or moving towards it, and on the first appearance of danger to such vehicle failed to stop the car in the shortest time and space possible, in violation of the ordinance aforesaid.''

2. ''That the motorman or other person in charge of and operating said street car failed to ring his bell or give other warning of the approach of said car and that it was going to move along the portion of the track crossed by the said automobile.''

3. ''That the motorman or other person in charge of and operating said street car knew, or by the exercise of ordinary care could have known, that the said automobile was or was about to be in a position of danger and failed to exercise such care and failed to stop the street car in time to avoid the damage to said automobile.''

4. "That the motorman or other person in charge of and operating said street car saw, or by the exercise of ordinary care could have seen, that the said automobile was going in a westerly direction and failed to exercise such care and failed to give the said automobile the right-of-way over said street car, in violation of the ordinances aforesaid."

5. "That the motorman or other person in charge of and operating said street car saw, or by the exercise of ordinary care could have seen the direction given by hand by a member of the police at that place, indicating that the said street car and all other north and south-bound vehicles should stop and permit the said automobile and all other east and west-bound vehicles to pass, and failed to exercise such care and failed to comply with the said direction in violation of the ordinances aforesaid."

6. "That after the said automobile had started to cross the track upon which the said street car was moving, or while it was crossing said track, the motorman or other person in charge of and operating said street car saw, or by the exercise of ordinary care could have seen, that the said automobile was in a position of danger in time to have avoided the collision, yet failed to exercise such care and failed to stop the street car in time to avoid the damage to the automobile."

Then follow allegations as to the assignment of the cause of action, with a prayer for judgment in the sum of $1000.

The answer is a general denial coupled with a plea of contributory negligence.

The evidence discloses that on the afternoon of October 21, 1913, the chauffeur in charge of the automobile referred to in the petition drove the same westwardly on Washington Avenue, a street extending east and west in the city of St. Louis, to Grand Avenue, extending north and south, turned north on grand Avenue and proceeded a short distance along the east side of that street, intending to then turn west into

Washington Avenue. Washington Avenue, entering Grand Avenue from the east at right angles, does not extend directly across the latter, but after a short "jog" to the north continues west. Consequently vehicles proceeding westwardly along Washington Avenue, across Grand Avenue, must turn to the right, upon entering the latter street, proceed a short distance north thereupon and then turn west into Washington Avenue. Upon Grand Avenue defendant maintained "double tracks" upon which it operates its street cars. At the time here in question, and for a long time prior thereto, a traffic officer, a member of the police force of the city of St. Louis, was stationed on Grand Avenue at or near the center of the western extension of Washington Avenue.

According to the evidence for plaintiff, when the chauffeur had proceeded a short distance north on Grand Avenue, after turning into that street, and had arrived near the point where he expected to turn to the left and proceed westwardly across defendant's tracks, in order to continue west on Washington Avenue, he sounded the horn of his automobile and gave to the traffic officer a signal indicating that he desired to proceed west; that the officer thereupon gave the appropriate signal for the chauffeur to so proceed, by extending his arms in a semi-circle, and that the chauffeur thereupon, in obedience to such signal, turned his automobile to the left and attempted to cross defendant's tracks, when the automobile was struck by a south-bound car of defendant. The chauffeur testified that just prior to receiving this signal he saw the street car, then at least one hundred feet north of this crossing, but that upon receiving the signal to cross he proceeded forward, looking ahead of him and managing the automobile, without paying further attention to the street car.

The traffic officer, Officer Galvin, testified that he gave plaintiff the signal aforesaid, and that when he did so the street car was just leaving Lucas Avenue, a short block north of Washington Avenue; and that

while he was facing to the south, thus giving the signal for the automobile to pass over the tracks, the street car came upon the crossing and struck the automobile, the witness leaping aside in order to avoid the oncoming car.

One Phillips, a witness for plaintiff, who was on the platform of the street car, testified that he saw the traffic signal when the car was "a pretty good distance," perhaps seventy-five feet, from the crossing, but the car did not stop or slacken its speed.

The testimony for defendant tends to show that the street car stopped at the Lucas Avenue crossing, a short block north of the scene of the collision; that the motorman "slowed down" the car, bringing it nearly to a standstill, whereupon the traffic officer signaled for it to proceed on its way, by extending his arms in a line north and south, but that when the motorman had put on the power and was proceeding to cross Washington Avenue, and when it was too late to stop the car to avoid coming upon the crossing, the officer suddenly changed his signal, giving a signal for vehicles to pass from Grand Avenue into Washington Avenue, i. e. the signal which the chauffeur is said to have obeyed.

The traffic officer, however, stoutly denies that he changed his signal at all, and the other testimony for plaintiff tends to corroborate this.

Though section 1351 of the ordinances supra, requiring drivers to "comply with any direction by voice or hand, of any member of the police force," etc., was pleaded and introduced in evidence, as the cause was tried and submitted below a recovery by plaintiff is not dependent upon the validity of this section, which (though here in no way challenged below) has been recently held invalid by the supreme Court in City of St. Louis v. Hugh Allen, not as yet reported. As to the alleged negligence of defendant, the case proceeds upon the theory that, ordinance or no ordinance, under the circumstances shown in evidence, the failure, if any, on the part of the

motorman to act upon the signal of the traffic officer was a failure to exercise ordinary care. And appellant does not contend that the case is in any wise affected by the decision in the Allen case, supra.

## I.

It is earnestly insisted by appellant's learned counsel that the court erred in refusing to peremptorily direct a verdict for defendant on the ground that the chauffeur was shown to have been guilty of contributory negligence as a matter of law. It is contended that the chauffeur had no right to proceed upon the assumption that the signal would be obeyed by the motorman, without taking further precautions to observe the movements of the approaching street car; that the chauffeur's duty to look was a continuing one, citing: Stotler v. Railroad, 204 Mo. 619, 103 S. W. 1; Laun v. Railway Co., 216 Mo. 563, 116 S. W. 553. This argument, we think, when applied to the facts of this case is manifestly unsound. Nor do the cases cited by appellant, supra, support appellant's position. They might be invoked to much purpose were the case one involving a collision at an ordinary railroad or street car crossing, where the duty of a person approaching such crossing to exercise due care is not in any wise affected by an officer or flagman giving signals, or otherwise. It is elementary that in passing upon the ruling upon the demurrer to the evidence, the evidence is to be viewed in the light most favorable to plaintiff, giving plaintiff the benefit of every reasonable inference that may fairly be drawn therefrom; consequently in so far as the argument for appellant appears to utilize evidence in defendant's behalf, it cannot be persuasive. And so viewing the evidence it cannot be said, as a matter of law, that the chauffeur was guilty of contributory negligence in proceeding to cross defendant's tracks, as he did, under the circumstances, without paying further heed to the street car. After receiving the signal to cross, and which in and of itself constituted

a signal to the motorman not to proceed forward with his car, the chauffeur had the right to assume that the street car would not be moved forward over the crossing while he was in the act of complying with the signal, unless, indeed, the circumstances then appearing were such as to cause a reasonably prudent man, in his position, to believe that the signal would not be obeyed by the motorman. According to testimony for plaintiff, however, when this signal was given the street car was just leaving Lucas Avenue, a short block to the north, with nothing whatever to indicate that the signal would not be obeyed by the motorman. In this connection see: Fusili v. Railway Co., 45 Mo. App. 53. And upon thus starting to cross it was the duty of the chauffeur to exercise due care to keep a lookout in the direction in which he was going. [See Gittings v. Schenuit, 122 Md. 282.]

We consequently rule this assignment of error against appellant.

The first instruction given for plaintiff is vigorously assailed upon the ground that it fails to require the jury to find that defendant's motorman could in fact have stopped his car after the giving of the signal which plaintiff contends was given; that is to say that the instruction permits a recovery upon a finding that the motorman failed to stop his car in obedience to such signal, irrespective of his ability to do so.

In substance this instruction requires the jury to find that the traffic officer gave a signal or direction for the street car to stop and permit the automobile to pass, and that the motorman saw the signal or by the exercise of ordinary care under the circumstances would have seen it, but failed to comply therewith, and then tells the jury that if they "further find from the evidence that such failure of the motorman in such respect caused the street car to collide with the automobile and damage it," and further find that such failure to obey the signal of the traffic officer, if given, "was failure on the part of the motorman to exercise

*ordinary care for the safety of the automobile,"* then to find for plaintiff, provided the jury further find that the driver of the automobile was at the time exercising the highest degree of care for his own safety and that of the automobile. (Italics ours).

A reading of the instruction, having particularly in view the words thereof which we have italicized above, makes it clearly appear, we think, that it is not fatally defective in the respect mentioned. It does more than require the jury to find merely that the signal was given as plaintiff contends, and that the defendant's motorman failed to comply with it. It requires a finding that such failure, if any, "was failure on the part of the motorman to exercise ordinary care for the safety of the automobile." In order to so find the jury must have found that, by the exercise of ordinary care, the motorman could have stopped his car in time to avoid the collision after the signal was given.

It is further urged that if the instruction is not open to the above mentioned attack made upon it, then it is unsupported by the evidence, in that the evidence failed to show that the motorman was able, in the exercise of ordinary care, to stop his car in time to avoid the collision after the signal was given. This contention, we think, is without merit. Plaintiff's evidence does not show how fast the car was going as it approached Washington Avenue. But the evidence, taken in the most favorable view to plaintiff, makes it appear that when the signal was given the street car was, as we have said, just leaving Lucas Avenue, where it had previously come to a full stop. From this it may be inferred that the car could readily have been stopped before reaching the Washington Avenue crossing, in obedience to the officer's signal (if given as shown by plaintiff's evidence), since it was broad daylight and the officer was standing in the open street in plain view. And defendant's evidence goes to show that the car was proceeding so slowly in approaching the Washington Avenue crossing that it was brought

virtually to a standstill a short distance north thereof. Obviously, if the signal for the chauffeur to proceed was given as shown by testimony for plaintiff, the evidence sufficed to warrant a finding that the car could have been stopped after such signal was given, in time to avoid the collision. Indeed, the evidence does not suggest any contention on this score below, the real dispute as to the facts (concerning which the evidence sharply conflicts), being as to the time of the giving of the signal upon which the chauffeur is said to have acted; defendant's contention being that the motorman received a signal to proceed which was afterwards suddenly changed.

We think that no prejudicial error was committed in giving this instruction.

## III

It is argued that the court erred in giving plaintiff's instruction No. 2 predicated upon a failure on the part of the motorman "to ring his bell or give other warning of the approach of the street car and that it was going to move along the portion of the track crossed by the automobile." Appellant argues that failure to ring the bell—as to which there was evidence pro and con—could not have been the proximate cause of the collision, for the reason that the chauffeur testified that he saw the car and hence needed no warning of its approach, citing Peterson v. Railways Co., 270 Mo. 67, 192 S. W. 938; Murray v. Railroad, 176 Mo. 183, 75 S. W. 611; Mockowik v. Railroad, 196 Mo. 550, 94 S. W. 256. The doctrine invoked by appellant was quite properly applied in the cases cited, as it has been in many other cases in this state; but we think that it finds no application to the facts of the case at bar. In the Murray case, and likewise in the Mockowik case, the plaintiff was injured in attempting to cross a railway track, saw the approaching car or train and had no reason to suppose that it would not continue on its way. In the Peterson case the automobile was stalled on defendant's tracks, and plaintiff, an occupant thereof, saw defendant's car when

about six hundred feet distant, and, it is said, watched it continually to the time of the collision. The court said: "Under such circumstances the sounding of a gong or the ringing of a bell could not impart more notice than the party already had." In the case before us the chauffeur, after seeing the car, as he said, at a distance of about one hundred feet north of the crossing, proceeded to cross in obedience to the officer's signal, acting upon the assumption that the signal would be obeyed by the motorman. If, indeed, the motorman was nevertheless about to proceed with his car over the crossing, the ringing of the bell would have given notice of that fact. While the chauffeur needed no further warning of the fact that the car was approaching from the north, he had, according to plaintiff's evidence, no warning or reason to suppose that it was about to proceed into Washington Avenue while he was thus attempting to cross the tracks. We are of the opinion that it was not reversible error, under the circumstances of the case, to submit, as a predicate of liability, the failure of the motorman to ring his bell. In this connection see Woodis v. Railways Co., 199 Mo. App. 348, 203 S. W. 489.

## IV

Lastly it is urged that the court erred in refusing to give an instruction for defendant withdrawing from the jury the fourth assignment of negligence in the petition, supra, which sought a recovery as for a violation by defendant of the "east and west right-of-way" ordinance. The ordinance in question was not introduced in evidence, and plaintiff did not go to the jury upon this assignment of negligence, but on the contrary abandoned it. The refused instruction is as follows:

"The court instructs the jury that plaintiff is not entitled to recover under or upon the assignment of negligence which charges that the motorman or other person in charge of and operating said street car saw or, by the exercise of ordinary care could have seen, that the said automobile was going in a westerly direction and

failed to exercise such care and failed to give the said automobile the right-of-way over said street car, in violation of the ordinances aforesaid, and this assignment of negligence is hereby withdrawn from your consideration.''

While defendant was entitled to have a proper instruction given, if offered, touching this matter, the instruction offered, following the language of the petition, is too broad and indefinite, and its refusal was not error. It refers to ''ordinances,'' and appears to withdraw from the consideration of the jury the failure of the motorman ''to give the said automobile the right-of-way over said street car,'' whether such failure was due to a violation of the ordinance pleaded purporting to give vehicles and cars going in an easterly or a westerly direction the right of way over those going in a northerly or southerly direction, or to disobedience by the motorman of the traffic officer's signal.

Appellant insists that since the instruction follows the language of the fourth assignment of error in the petition respondent cannot be heard to say that it is too broad or indefinite. But this is a *non sequitur*. Regardless of the particular language employed in the petition, if appellant desired an instruction given for the purpose mentioned, it was its duty to offer a clear and definite instruction withdrawing the issue in question, and which would not be readily susceptible to a construction at variance with instructions covering the live issues in the case.

Respondent contends that in any event the refusal to give a proper instruction withdrawing this issue from the jury, though technical error, ought not to be regarded as prejudicial error, since the instructions given, omitting all reference to this issue, fully informed the jury as to what they must find in order to return a verdict for plaintiff. But, under the circumstances, this is a matter upon which we need not pass judgment.

We perceive no reversible error in the record, and the judgment should accordingly be affirmed. It is so ordered. *Reynolds, P. J.*, and *Becker, J.*, concur.