254 S.W.2d 585 (1953)
ROMANDEL
v.
KANSAS CITY PUBLIC SERVICE CO.
No. 42987.
Supreme Court of Missouri, Division No. 1.
January 9, 1953.
Motion for Rehearing or to Transfer to Denied February 9, 1953.
*588 Charles L. Carr, Kansas City, E. E. Thompson and Sam Mandell, Kansas City, Popham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel, for appellant.
Jacob Brown, Lyman Field and Clay C. Rogers, Kansas City, Brown & Koralchik and Rogers, Field & Gentry, Kansas City, of counsel, for respondent.
Motion for Rehearing or to Transfer to Court En Banc Denied February 9, 1953.
LOZIER, Commissioner.
Suit for damages for personal injuries. Plaintiff-respondent (herein called plaintiff) submitted her case upon both primary and humanitarian negligence and had a verdict and judgment for $12,000. Defendant-appellant (herein called defendant) appeals, contending: Plaintiff was contributorily negligent as a matter of law and failed to make a submissible humanitarian case; error in instructions and in the admission of a deposition; and jury misconduct.
Plaintiff was struck by defendant's southbound streetcar at a point south of the intersection of Main and West Eleventh Streets in Kansas City. Eleventh Street runs east-west; it does not cross Main; both East Eleventh and West Eleventh "dead end" on Main. West Eleventh is 36' 7" wide between curbs.
Main runs north-south, and is 46' wide between curbs. Apparently, the intersection is level. Defendant's Exhibit A, a photograph, shows that for some distance north of East Eleventh's (projected) north curbline, Main is "upgrade" to the Main-West Eleventh intersection. Main has two streetcar tracks; the west rail of the east (northbound) track is 5' 5" from the east rail of the west (southbound) track; the distance between the rails of each track is 4' 6". There is a streetcar loading and unloading zone (herein called the zone) contiguous and parallel to the east rail of the northbound track; it is 4' wide; its north end is 2' south of a pedestrian crosswalk and west of the traffic control signal hereinafter referred to as the east signal. Immediately south of the intersection is an east-west pedestrian crosswalk. Its north boundary is West Eleventh's (projected) south curbline and its south boundary is 49' 7" from West Eleventh's (projected) north curbline; it is 13' wide; its south boundary is marked by white lines between the curbs and points about 1'-1.5' from the outside rails of the two tracks; the boundary is not marked in the intervening space. (We use the present tense in referring to conditions as they existed on the day of the accident.)
On each side of Main, at the curb about 2' south of the crosswalk's south line, are traffic control signals (herein respectively called the east and the west signals). These *589 are combination red-yellow-green lights for vehicles and "Walk""Don't Walk" lights for pedestrians. There is a similar signal (herein called the north signal) at Main's west curb on East Eleventh's (projected) south curbline; this is approximately 106' north of West Eleventh's north curb. Southbound vehicle traffic on Main is regulated by the west and north signals. Pedestrian traffic over the crosswalk is regulated by the east and west signals. When the east and west signals are "Walk," the west and north signals are red for southbound vehicles. The lights sequence of the east and west signals for pedestrians is: "Walk" for 17 seconds and then "Don't Walk." At that "Don't Walk," the west and north signals for southbound vehicles continue red for 5 seconds, are yellow for 2½, green for 17, yellow for 2½ (during all of which time the east and west signals are "Don't Walk") and then red again for the succeeding 17 seconds that the east and west signals are "Walk."
City ordinances in evidence define "crosswalk" as "portions of a roadway indicated for pedestrians by lines or other markings on the surface." It is the duty of the operator of a vehicle: On his green light, to yield the right of way to pedestrians "lawfully within the crosswalk" when his light becomes green; on his yellow-after-green light, to stop ("unless so close to the intersection that a stop cannot be made in safety") before entering the crosswalk; and on his red light, to stop before entering the crosswalk and not start until his light is green. In the traffic district in which the Main-West Eleventh intersection is located, "a pedestrian shall not cross at any place except in a marked or unmarked roadway" except that at several intersections, including Main-West Eleventh, "a pedestrian may cross within the intersection as authorized so to do by pedestrian `Walk' signals and may cross * * * at any angle; * * *. A pedestrian crossing or starting across any such crosswalk on a green signal or pedestrian `Walk' signal shall have the right of way over all vehicles * * * until such pedestrian has reached the opposite curb * * * and it shall be unlawful for the operator of any vehicle to fail to yield the right of way to any such pedestrian."
Plaintiff testified that: About 8 a. m. on December 1, 1948, she stepped from the front of a northbound streetcar. It was a clear day and broad daylight. Standing in the north end of the zone and facing east, she saw the east signal's "Don't Walk." After the streetcar had moved north she turned around and stood in the zone, facing west, for 2 or 3 seconds. When she saw the west signal change to "Walk," she looked to her left (south-southwest) and saw no northbound vehicular traffic. She then looked to her right (north-northwest) and saw no vehicles in the intersection. The northbound streetcar had moved beyond her vision. She was wearing a hooded coat with the hood on over her head. She then walked due west along, or "probably 6 inches or maybe a foot" south of, the crosswalk (the south boundary of which was not marked entirely across the street). She "continued to look straight ahead" and "was watching where I was walking." She walked "slowly" and "at her normal gait, much slower than an ordinary man walks." Other pedestrians were using the crosswalk and she "was watching out for other people." She did not hear the streetcar's approach or any streetcar signal. Had she had any warning before she got to the southbound track she could have stopped before she went on that trackshe "could have stopped instantly at the rate she was walking." She was looking straight ahead and did not again look to her right until she was in the center of the southbound track when she saw the streetcar 5' or 6' away, coming at a speed which she estimated was 5-7 m.p.h. She "tried to run [westward] out of its way as fast as I could" but was struck on her right side by the streetcar's right front corner.
Defendant argues that plaintiff's testimony that she did not see the streetcar until she reached the middle of the southbound track is "contrary to known physical facts"; that even if she was looking straight ahead, her vision must have encompassed a distance at least 15' to her right. Hence, defendant contends, the verdict *590 was against the weight of the evidence. There was no evidence as to this lateral vision matter and whether plaintiff saw the streetcar before she was in the southbound track was a jury question. But, apart from those facts, an assignment that the verdict is against the weight of the evidence is "a matter to be decided solely by the trial court." Stokes v. Wabash R. Co., 355 Mo. 602, 197 S.W.2d 304, 306[2].
Plaintiff's primary negligence submission was the streetcar's entry into the crosswalk against a red light. Defendant contends that plaintiff was guilty of contributory negligence as a matter of law. In crossing Main on a "Walk" light, plaintiff had a duty to exercise the same care for her own safety that a reasonably prudent person would exercise under the same or similar circumstances. Anno. 164 A.L. R. 8, 15, 36. And whether plaintiff was negligent was for the jury unless she clearly failed to exercise such care as would ordinarily be exercised by a reasonably careful person under all of the instant circumstances; and in determining that matter, the court must accept as true the evidence favorable to her and allow her the benefit of every reasonable inference permissible from all the evidence. Rhineberger v. Thompson, 356 Mo. 520, 202 S.W.2d 64, 67[2].
Defendant contends that plaintiff was contributorily negligent as a matter of law in three ways, viz.: In failing to look for or see the "clearly observable" approaching streetcar; in not walking "within" the crosswalk; and in failing to keep a lookout for approaching vehicles. Defendant cites cases wherein it was held that, under the particular circumstances, failure to look and see what was plainly visible was contributory negligence as a matter of law. However, defendant's argument ignores the evidence corroboratory of plaintiff's statement that she saw no vehicles in the intersection when she looked northwardthe evidence tending to show that the streetcar was not in the intersection when she looked. Plaintiff testified that she walked at her "normal gait * * much slower than the ordinary man walks." Assume that the jury believed that her gait was 2½ m. p. h. or 3.66' per second. (We have judicially noticed that the "ordinary walking speed of the average man is 2 to 3 miles per hour, more nearly the latter." McGowan v. Wells, 324 Mo. 652, 24 S.W.2d 633, 639[6]). At that gait, it took plaintiff almost 5 seconds to reach the collision point, nearly 18' from where she started. If the streetcar's speed was 7 m. p. h. (10.3' per second), it was over 50' away when plaintiff started. And if plaintiff's gait was 2 m. p. h. (2.93' per second), as the jury might reasonably believe, it took plaintiff 6 seconds to reach the collision point and the streetcar was 53' or 62' (if moving at 6 or 7 m. p. h., respectively) away when plaintiff started. The jury could reasonably infer that the streetcar was not in the intersection, the north boundary of which is approximately 50' north of the crosswalk's south boundary.
Defendant says that, as a matter of law, plaintiff was negligent in walking 6"-12" outside the crosswalk in violation of city ordinances; that it "is axiomatic in Missouri that violation of an ordinance or statute constitutes negligence," citing Brannock v. Elmore, 114 Mo. 55, 21 S.W. 451, and Swigart v. Lusk, 196 Mo.App. 471, 192 S.W. 138. However: "Contributory negligence must contribute before it will bar recovery." Stack v. General Baking Co., 283 Mo. 396, 223 S.W. 89, 95 [13, 14]. See also Cantwell v. Cremins, 347 Mo. 836, 149 S.W.2d 343, 346[5, 6].
While plaintiff's testimony was that she walked along the boundary or 6"-12" south of it, we shall assume that she was outside the crosswalk, the south line of which was unmarked between the two tracks. We shall also assume, without deciding, that the ordinance relating to traffic control at this particular intersection required plaintiff to walk "within" the crosswalk and that, under another ordinance, she was not entitled to the "right-of-way." Neither the violation of the first ordinance nor the loss of "right-of-way" under the second was a proximate cause of plaintiff's injury. Plaintiff was not struck because she was outside the crosswalk. That she was 6"-12" south of it did not, in any way, contribute to cause *591 the collision between herself and the southbound streetcar which had entered, crossed and gone beyond the crosswalk. She would have been struck an instant sooner had she been walking inside or "along" the crosswalk's unmarked south boundary. See Anno. 164 A.L.R. 8, 194-195.
Defendant contends that, even assuming "that plaintiff was proceeding within the crosswalk and with the `Walk' light, she would still be under a duty to exercise due care to keep a lookout for any approaching vehicle." However, plaintiff's duty to look northward again was relative, not absolute. See 5 Am.Jur., Automobiles, Sec. 453, p. 761. "As a general rule a person is not required to look for danger when there is no cause to anticipate danger." Williamson v. St. Louis Public Service Co., 363 Mo. ___, 252 S.W.2d 295, 299[5-8]. Other pedestrians were using the crosswalk, and plaintiff was "watching where I was going and where I was walking." See Anno. 164 A.L.R. 8, 59-60. Compare Brown v. Conser Laundry Co., Mo.Sup., 246 S.W. 166, 170, wherein it was held that it was for the jury whether the pedestrian, walking slowly, "looking down and thinking", was contributorily negligent.
The "Walk" light itself was some assurance to plaintiff that she could proceed safely. She had the right to assume that all southbound vehicles would stop. Anno. 164 A.L.R. 8, 64, citing Weishaar v. Kansas City Public Service Co., Mo.App., 128 S.W.2d 332, and Hanks v. Anderson-Parks, Inc., Mo.App., 143 S.W.2d 314. See also: Brown v. Conser Laundry Co., Mo.Sup., 246 S.W. 166, 170 [2]; American Automobile Ins. Co. v. United Rys. Co. of St. Louis, 200 Mo.App. 317, 206 S.W. 257, 258-259[1, 2]; Robinson v. Mayer, Mo.App., 94 S.W.2d 1067, 1069[2, 3]. And plaintiff had the "right-of-way." of course, neither her right to assume that southbound vehicles would stop nor having the "right-of-way" relieved her of her duty to exercise ordinary care. Anno. 164 A.L.R. 8, 35, 36, 64; Cash v. Sonken-Galamba Co., 322 Mo. 349, 17 S.W. 2d 927, 931[10]; Hammond v. Emery-Bird-Thayer Dry Goods Co., Mo.Sup., 240 S.W. 170, 173[1-3]; Sullivan v. Union Electric Light & Power Co., 331 Mo. 1065, 56 S.W.2d 97, 100-101[5]. But her right to assume that southbound vehicles would not enter the crosswalk and her realization that she had the "right-of-way" were factors to be considered by the jury in determining whether she was negligent in not looking northward again. See Rhineberger v. Thompson, 356 Mo. 520, 202 S.W. 2d 64, 68[3-8].
For the foregoing reasons, we rule adversely to defendant its assignment that plaintiff was guilty of contributory negligence as a matter of law.
Plaintiff's Instruction No. 4 placed upon defendant the burden of proof as to plaintiff's contributory negligence and, in its second paragraph, authorized the jury to find that plaintiff "was not contributorily negligent in failing to see the streetcar if she, in crossing Main Street, was at all times acting as an ordinarily careful person would act under the same or similar circumstances." (We consider only instant defendant's objections to this second paragraph, which certainly is not a "model".)
Defendant states that "the instruction ignores defendant's pleaded defense and proof of violation of the [walk-within-the-crosswalk] ordinance." We have hereinbefore held that plaintiff's walking outside the crosswalk was neither a proximate cause of the collision nor contributory negligence as a matter of law. Furthermore, in its Instruction No. 9, defendant submitted, as plaintiff's contributory negligence, only her failure to look for and see the streetcar, not her failure to walk within the crosswalk.
Defendant's other objection to Instruction No. 4 is based upon defendant's contention that plaintiff was contributorily negligent as a matter of law in failing to keep a lookout for the "clearly observable" approaching streetcar and, having looked, in failing to see it. We have hereinbefore ruled, adversely to defendant, the issues of plaintiff's contributory negligence as a matter of law in failing to see the streetcar before she started to walk or after she began walking. However, defendant *592 argues thus: Plaintiff had a duty to look to the north and she did; the streetcar was "clearly observable"; she saw, or in the exercise of ordinary care, must have seen it; hence, the instruction erroneously told the jury that if she were using ordinary care, her failure to see it was not contributory negligence. Thus, defendant rephrases and renews its contention that plaintiff was contributorily negligent as a matter of law. As stated, there was evidence from which the jury could infer that the streetcar was not in the intersection when plaintiff looked northward. We repeat that it was a jury question whether, under all the circumstances, plaintiff exercised ordinary care in failing to look farther north, beyond the intersection, before she started, or in failing again to look northward as she walked. The second paragraph of Instruction No. 4 (insofar as herein attacked) merely told the jury that, if plaintiff's failure to see the streetcar was not the result of a failure to exercise ordinary care, then plaintiff was not negligent in failing to see it. We overrule this assignment.
Plaintiff's primary negligence submission, Instruction No. 1, told the jury that, under city ordinances, it was the defendant's duty to stop the streetcar before "entering upon" the crosswalk on a red light and when the pedestrian "Walk" light was on, and that failure to stop under such circumstances was negligence. The instruction hypothesized plaintiff's walking "at or near the south side of" the crosswalk upon a "Walk" light, the streetcar's entry, against a red light, "into and through" the crosswalk, the collision, and plaintiff's injury "as a direct result" of defendant's negligence in driving the streetcar "into and through" the crosswalk. Defendant's criticism of the instruction is that it failed to require a finding that plaintiff was "within" the crosswalk, and that, therefore, the operator's failure to stop before entering the crosswalk was not a proximate cause of the collision.
Again, we shall assume without deciding that the ordinances relating to traffic control at this intersection required plaintiff to walk "within" the crosswalk and that pedestrians walking within the crosswalk had the "right-of-way." However, as we have said, plaintiff's violation of one ordinance (requiring pedestrians to walk within the crosswalk and giving such pedestrians the "right-of-way") was neither contributory negligence as a matter of law nor a proximate cause. It was also a jury question whether defendant violated the other ordinance (requiring vehicles, on a red light, to stop before entering a crosswalk) and, if so, whether such violation was a proximate cause, irrespective of whether plaintiff walked within the crosswalk or 6"-12" outside of it. So, it was not necessary that plaintiff's Instruction No. 1, submitting defendant's violation of one ordinance as a proximate cause, require a finding that plaintiff herself was not violating another ordinanceor a finding that she was walking within the crosswalk and thus entitled to the "right-of-way." (Defendant offered no instruction submitting that the streetcar operator's failure to stop before entering the crosswalk was not a proximate cause.) This assignment is overruled.
We believe that plaintiff made a submissible humanitarian case (failure to warn, slacken or stop). The operator admitted that he gave no warning signal. Plaintiff said that, had she been warned, she would and could have stopped short of the streetcar's path. Defendant does not contend that no submissible case was made on failure to warn.
The record amply supports plaintiff's claim of obliviousness. Standing in the zone about 2' east of the northbound track's east rail, facing west, she saw the west signal's "Walk." Before she started, she looked to her left and then to her right (northward) and saw no vehicles in the intersection. She started across, walked facing west and did not look northward again until she was in the center of the southbound track. She did not hear the streetcar's approach. She heard no warning signal. The jury certainly could infer from her conduct that she was, in fact, oblivious. However, the operator's duty arose only upon the reasonable appearance of plaintiff's obliviousness. Turbett *593 v. Thompson, 363 Mo. ___, 252 S.W. 2d 319, 321[2, 3]. Defendant is not liable unless the operator did realize, or should have realized, that plaintiff was oblivious and intended to continue into the streetcar's path and thereby was in imminent peril; and the operator thereafter could have avoided the collision. Wilkerson v. St. Louis Public Service Co., Mo.Sup., 243 S. W.2d 953, 955.
Under the evidence, viewed favorably to plaintiff, the operator, proceeding through the intersection against a red light, moved toward the crosswalk at 5-6-7 m. p. h., sounded no warning, did not slacken and did not apply the emergency brakes until he first saw plaintiff in the center of the southbound track, 5'-6' south of the streetcar. The jury could reasonably find that the operator, in the exercise of ordinary care, saw or should have seen plaintiff leave the zone and walk toward the streetcar's path; that he knew or should have known that she was walking on a "Walk" light; that he saw or should have seen that she was facing west and did not turn her head northward; and that her conduct and demeanor was such that the operator must or should have realized that she was oblivious, and apparently intended to continue into the streetcar's path and not stop short of its overhang. Compare Lefkowitz v. Kansas City Public Service Co., Mo.Sup., 242 S.W.2d 530, and Stith v. St. Louis Public Service Co., 363 Mo. ___, 251 S.W.2d 693.
Just where plaintiff came into imminent peril was a jury question. Harrington v. Thompson, Mo.Sup., 243 S.W.2d 519, 525[8, 9]. Here, the jury could reasonably have found that she entered the imminent peril zone at some point east of the southbound streetcar's east overhang. Conceding that the "zone of imminent peril is broadened by obliviousness," defendant contends that the imminent peril zone began at (not one step short of) the streetcar's east overhang. Even so, that was 10.5' from where plaintiff started. It took plaintiff over 3½ seconds to reach that point if her gait was 2 m. p. h., almost 3 seconds if 2½ m. p. h., and about 2½ seconds if 3 m. p. h. During that time, the streetcar moved from between 18.3' and 36', depending upon plaintiff's gait and the streetcar's speed. There was evidence that the emergency brakes were not applied until the instant of impact. The operator testified that he moved 15'-17' from the time he first saw plaintiff and stopped within 15'-20' after he applied the brakes. Other evidence was that the streetcar moved "not over six or eight feet" after the impact. There was evidence that, allowing 1/3 of a second for reaction time, the streetcar, moving at either 5, 6 or 7 m. p. h., could be brought to an emergency stop within 12'-14'. Allowing ¾ of a second for reaction time (defendant's suggestion), the streetcar moved 12.8'-28.33' during the remaining 2.75-2.25-1.75 seconds. The jury could, reasonably and without resort to speculation or conjecture, find that the operator had ample time within which: To discover plaintiff in a position of imminent peril, and, thereafter, to apply the brakes and thereby stop the streetcar before it struck plaintiff or thereby slacken its speed sufficiently to have enabled plaintiff to emerge from the peril zone. Compare Stith v. St. Louis Public Service Co., 363 Mo. ___, 251 S.W.2d 693, 698[9]. For if the operator could have avoided the collision by stopping, he could have avoided it by slackening. Plaintiff was in the streetcar's west overhang when she was struck. Had plaintiff been able to take that last step, she would have been in the clear. "The slightest checking of the speed of the car would have saved plaintiff from harm." Diel v. St. Louis Public Service Co., 238 Mo.App. 1046, 192 S.W.2d 608, 611. Again compare Stith v. St. Louis Public Service Co., 363 Mo. ___, 251 S.W.2d 693, 698[9, 10]. Contrast Turbett v. Thompson, 363 Mo. ___, 252 S.W.2d 319.
Plaintiff's humanitarian negligence submission, Instruction No. 2, contained this direction: "* * * and if you further find that when plaintiff left said safety or loading zone, if she did, and started walking west, if so, she became and was in a position of imminent peril of being struck * * * and that plaintiff * * * was oblivious, if she was, for any reason of *594 the approach of said streetcar, and if you further find the motorman * * * saw, or in the exercise of ordinary care could have seen plaintiff in such position of imminent peril, and that she was oblivious thereof, if so, if any, in time thereafter by the exercise of ordinary care * * *," etc. (Our italics.) Defendant contends that the instruction "assumes and directs the jury to find that plaintiff was in a position of imminent peril when she was leaving the safety zone and erroneously instructs the jury that it was the motorman's duty to act to avoid injury at that moment."
An instruction is erroneous if it "specifically directs a jury to, or makes likely that a jury will, find that plaintiff was in a position of imminent peril at a time and place when and where he could not have been". Harrington v. Thompson, Mo.Sup., 243 S.W.2d 519, 525 [8, 9]. Instruction No. 1 is not as clear as it might have beenfor example, as if it read, "that as plaintiff was walking west toward defendant's southbound streetcar track, if so, she came into and was in a position of imminent peril," etc. However, the instruction is reasonably susceptible to an interpretation other than that suggested by defendant. We believe that "when plaintiff left said safety zone" would most likely be understood as "after plaintiff left said safety zone", and that "and started walking west, she became and was in a position of imminent peril" as "while walking west she came into and was in a position of imminent peril." Thus construed, the instruction authorized the jury to find that plaintiff, after she left the zone and was walking west, came into imminent peril at some point east of the streetcar's east overhang. Thus construed, the instruction did not authorize the jury to find that she came into imminent peril "at a time and place when and where she could not have been," viz., "at the moment" she left the zone. Contrast Kelley v. St. Louis Public Service Co., Mo.Sup., 248 S.W.2d 597 [6, 7].
In any event, the above quoted portions of plaintiff's verdict-directing Instruction No. 2 were, at most, only ambiguous and possibly misleading. And an instruction which requires a finding "of all the essential elements of a plaintiff's case, but states some of these ambiguously or in language which might be misleading," may be clarified and made definite by a defendant's instruction. McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S.W.2d 37, 40[6-9]. Defendant's Instruction No. 10 was: "The court instructs the jury that under Instruction No. 2, the operator of defendant's streetcar owed the plaintiff no legal duty whatever unless and until plaintiff was actually in a position of imminent peril, as that term is elsewhere defined, if she was, from the movement of said streetcar and under circumstances that would charge a reasonably careful streetcar operator with knowledge that such imminent peril existed to plaintiff. By the term, `position of imminent peril,' the court does not mean a place wherein there is a possibility of injury occurring but the court means a place and position wherein there is certain danger." Read with Instruction No. 10, Instruction No. 2 could not have misled the jury into finding that plaintiff came into imminent peril at a time and place when and where she could not have been, viz., the instant she stepped over the zone's west boundary line. The claimed defect in Instruction No. 2 was cured. Rasp v. Baumbach, Mo.Sup., 223 S.W.2d 472, 474[5].
Defendant assigns error in the admission of the deposition of Bletch Carter, a resident of Jackson County, because "there was no showing that Carter was outside the county at the time the deposition was offered and read." Carter's deposition had been taken, by agreement as to time and place, the day before the trial. In his deposition, Carter stated that: He lived in Jackson County; one of plaintiff's attorneys had asked to take his deposition; he had not been subpoenaed; he owned an automobile tractor which he drove under contract hauling trailers; he was "leaving as soon as possible for Boston. Q. * * * You mean withinjust as soon as this deposition is through? A. I expect to be on my way within two hours for Boston, Mass."
At the trial several days later, plaintiff's counsel, in offering the deposition, stated: "The deposition shows that the witness is *595 a resident of Jackson County, Missouri, but that he left Jackson County, Missouri, before we started in the trial of this case, and is out of the county now on business of his own. That is true, isn't it? Mr. Thompson [defendant's counsel]: That is what he testified to. I don't know where he is. Mr. Rogers [plaintiff's counsel]: He is out of Jackson County. The Court: Are you objecting to the deposition? Mr. Thompson: On the ground he is subject to the jurisdiction of the court. The Court: Overruled." Defendant's counsel then objected to portions of the deposition. After the deposition was read, defendant's counsel made no motion to strike but stated: "We want to renew our objection to the admissibility of the deposition because it is shown he was subject to the jurisdiction of the court, he wasn't subpoenaed, he was permitted to leave voluntarily and his deposition would not be admissible under those circumstances."
However, we cannot consider defendant's assignment as to the admission of the deposition. "Allegations of error, in order to be preserved for appellate review, must be presented to the trial court in a motion for new trial; * * *. Where definite objections or requests with specific statement of grounds were made during the trial * * * a general statement in the motion of any allegations of error based thereon is sufficient." Supreme Court Rule 3.23. Defendant's specific objection at the trial was, and its complaint in this court is, that the deposition itself was not admissible (under Section 492.400 RSMo 1949, V.A.M.S.) because the witness was "subject to the jurisdiction of the court," had not been subpoenaed and "was permitted to leave voluntarily." The only assignment in defendant's new trial motion which could possibly relate to the admission of the deposition was this generality: "Because the court erred in admitting, over the objections and exceptions of defendant, incompetent, irrelevant and prejudicial evidence offered by plaintiff." In this court, defendant does not complain of the admission in evidence of any of Carter's testimony. See Bach v. Ludwig, Mo.App., 109 S.W.2d 724, 728[5]. The general allegation in the new trial motion did not call to the trial court's attention any claimed error in the admission of the deposition itself. "There is a material difference between an objection to evidence as incompetent and an objection as to the competency of a witness to testify, and it has been held that an allegation in a motion for new trial such as that here is not sufficient to present for review an objection to the competency of the witness to give the testimony." Drake v. Kansas City Public Service Co., 333 Mo. 520, 63 S.W.2d 75, 81 [8]. See Gabelman v. Bolt, 336 Mo. 539, 80 S.W.2d 171, 175 [6, 7]. This assignment is overruled.
In its new trial motion, defendant alleged that, while the case was being tried, a number of the jurors went to the intersection and observed the operation of the traffic control signals and traffic movement and made measurements or calculations of distances; that the number of signals and the operation thereof at trial time were not the same as on the day of the accident. At the hearing on the motion, defendant offered the affidavits of three jurors and the oral testimony of other jurors, the general effect of which was that several jurors had either incidentally passed by and used the intersection or had purposely gone there to make general observations. The affidavits and testimony were received, subject to objection, and were later stricken on plaintiff's motion.
The trial court properly struck from the record the jurors' affidavits and testimony. A juror may not impeach the verdict and his "testimony is inadmissible whether the impeaching juror concurred in or dissented from the verdict, and whether his acts were committed inside or outside the courtroom." Davis v. Kansas City Public Service Co., 361 Mo. 168, 233 S.W.2d 669, 676[6, 7]. Since the trial court properly struck out the jurors' affidavits and testimony as incompetent, there is no evidence in the record tending to show misconduct by the jurors. See cases cited in Middleton v. Kansas City Public Service Co., 348 Mo. 107, *596 152 S.W.2d 154, 158-159, under "(1)". This assignment is overruled.
The judgment is affirmed.
VAN OSDOL, COIL, CC., concur.
PER CURIAM.
The foregoing opinion by LOZIER, C., is adopted as the opinion of the court.
All concur.